DECISION AND JUDGMENT ENTRY
This case presents consolidated appeals from the Washington County Court of Common Pleas, which convicted Kenneth Shinn of attempted murder and felonious assault for shooting his wife, Barbara Shinn. The trial court dismissed a third count, aggravated burglary, prior to trial. In case 99CA35, the defendant appeals his convictions, raising four assignments of error:
 I. Appellant's conviction for the offense of attempted murder was against the manifest weight of the evidence.
 II. Appellant's conviction for the offense of felonious assault was against the manifest weight of the evidence.
 III. The trial court erred in failing to require the state to elect which of the two allied offenses it wished to pursue, and in sentencing appellant for both offenses.
 IV. The trial court erred in failing to impose the shortest available prison term, on the offense of attempted murder, where appellant had not previously served a prison term.
In case 99CA29, the state appeals the trial court's dismissal of the aggravated burglary count, raising a single assignment of error:
 The trial court erred by granting the defendant-appellee's motion to dismiss count one of the indictment.
In case 99CA35, we affirm the defendant's convictions in all respects, except for the sentence imposed for attempted murder. We vacate that portion of the defendant's sentence and remand for re-sentencing because the trial court failed to make the proper statutory findings before imposing a prison term longer than the minimum. We also hold that the trial court incorrectly dismissed the aggravated burglary count alleged in the indictment. Accordingly, we reverse in case 99CA29 and remand for further proceedings.
 I.
The defendant and Mrs. Shinn were married in 1996 and endured a marriage plagued by financial problems and drug abuse. Mrs. Shinn finally left the couple's Morgan County home in January 1999 after a bitter fight with the defendant. Three days later, she moved into a rented mobile home in Washington County and retrieved various personal belongings from the marital residence.
After a night of drinking, the defendant returned home and noticed numerous items missing, including one of the couple's dogs. He became angry and began looking for Mrs. Shinn, taking a loaded .44 Magnum handgun with him. He finally located Mrs. Shinn's new residence and stormed inside. By the time he left, Mrs. Shinn had been shot once in the arm.
Based on these events, a Washington County grand jury returned a three-count indictment against the defendant. The indictment alleged one count of aggravated burglary (in violation of R.C.2911.11[A][1] and [2]), one count of felonious assault (R.C.2903.11[A] [2]), and one count of attempted murder (R.C. 2903.02
and 2923.02). Each count carried a specification that the defendant used a gun when committing the charged offenses. See R.C. 2941.145.
Prior to trial, the defendant moved to dismiss the aggravated burglary count. The defendant argued that R.C. 3103.04 gave him a spousal "privilege" to enter Mrs. Shinn's dwelling, thus precluding the state from establishing the trespass element of aggravated burglary as a matter of law. The trial court granted the motion at a pretrial hearing and the case proceeded to a jury trial on the felonious assault and attempted murder counts.
The state called Mrs. Shinn as its first witness. Mrs. Shinn testified that she moved out of the marital residence after the defendant punched her in the chest, knocked out one of her teeth, and threatened to burn down their home. She claimed that the defendant told her "there was no way out" and that she "would never leave him alive." Mrs. Shinn also testified that the defendant stood over her with a kerosene can and "said he was going to fix everything and was just going to burn me and the trailer up." After that incident, Mrs. Shinn went to the Washington County home of Sonny Place, who was her employer and one of the defendant's close friends. She stayed there for three days before renting a nearby mobile home from Mr. Place's grandmother. Mrs. Shinn admitted that she began a sexual relationship with Mr. Place during the time she stayed at his home.
On the night of the shooting, Mr. Place was at Mrs. Shinn's trailer helping her move in. Earlier that day, Mrs. Shinn had taken personal belongings and a dog from the marital home while the defendant was gone. Mrs. Shinn testified that she was in a back bedroom and Mr. Place was asleep in the living room when she heard the defendant's truck arrive at the house at about 3:00 a.m. Mrs. Shinn walked toward the front door while Mr. Place hid in the back bedroom. As Mrs. Shinn approached the front door, the defendant walked in, threw a beer can to the floor, and pulled out a gun. Mrs. Shinn testified that the defendant started "smacking me with the gun * * * and asking me who I thought I was taking his dog." Mrs. Shinn walked backwards down the hallway trying to get away. When Mrs. Shinn reached the end of the hallway, the defendant pointed the gun to her head. Mrs. Shinn testified that she pleaded to the defendant, "Please don't kill me," at which time Mr. Place jumped out of the back bedroom. The gun went off a moment later, shooting Mrs. Shinn in the arm. While Mr. Place and the defendant wrestled, Mrs. Shinn unsuccessfully tried to grab the gun before running out of the trailer for help. Mr. Place came out of the house shortly afterwards, told her he had gotten rid of the gun, and took her to the hospital. Mrs. Shinn suffered a gunshot wound where the bullet "grazed" her arm and sustained gun powder burns on her wrist.
The state also called Mr. Place, who gave testimony similar to Mrs. Shinn's. Mr. Place recalled being asleep on the couch when the defendant arrived at Mrs. Shinn's trailer. When he heard the defendant's truck, he moved to the back bedroom "just to keep things under control in case something would have happened" while Mrs. Shinn went to the living room. Mr. Place heard the defendant "storming in" to the trailer and yell about Mrs. Shinn taking his dog. Although he heard Mrs. Shinn say "please don't hit me," Mr. Place did not actually see the defendant strike her with the gun. However, Mr. Place noticed Mrs. Shinn backing down the hallway until she got to the bathroom, which was located next to the bedroom. Mr. Place testified that he heard a "clicking noise" and "figured it was a gun." He also heard Mrs. Shinn say, "Please don't shoot me." After hearing the clicking sound and Mrs. Shinn's plea for her life, Mr. Place emerged from the back bedroom, approached the defendant from behind, and tried to take the gun away. Mr. Place testified that the gun went off just as he was trying to strip it from the defendant. After the gun went off, Mr. Place wrestled with the defendant for the gun. During the struggle, Mr. Place told the defendant that he had started "having an affair" with Mrs. Shinn two days before, thinking that the revelation "might help him [defendant] want to fight or let loose of the gun or something." Mr. Place eventually wrestled the gun away from the defendant and threw it outside the trailer.
On cross-examination, the defendant's counsel tried to impeach Mr. Place with details about his affair with Mrs. Shinn. Defense counsel also attempted to impeach Mr. Place with his testimony from a preliminary hearing, during which he claimed no knowledge of who was holding the gun at the time it fired. Mr. Place had also testified that he "honestly couldn't say whether the gun went off before [or] after" he grabbed the defendant from behind. These statements differed from Mr. Place's trial testimony that the gun went off just as he tried to strip it from the defendant's grasp.
Detectives Brian Schuck and Rod Kinzel of the Washington County Sheriff's Office also testified for the state. Detective Schuck identified the defendant's .44 Magnum handgun as the weapon officers found behind Mrs. Shinn's trailer. He also testified that the defendant's gun was a "single action" weapon, meaning it would not discharge unless the "hammer" was cocked back. In other words, a person firing the defendant's gun would need to pull the hammer back and then pull the trigger before the gun would fire.
Detective Kinzel testified about his investigation of the four bullet holes found at the scene. He concluded that all were made by the same shot. The first two holes were on either side of a wall that separated the hall closet from the bathroom. The last two holes were on either side of a bathroom wall, on the opposite side of the room from the other holes. The first two holes were approximately forty-two inches off the floor; the last two were approximately forty-one inches high. Detective Kinzel further testified to the bullet's probable trajectory. He concluded that the bullet fired from the defendant's gun traveled through the back wall of a hall closet, into the bathtub area of the bathroom, across the bathtub, through the back wall of the bathroom, and out of the trailer. Detective Kinzel also confirmed that an empty shell casing was located in the "up" position of the defendant's gun, indicating that it was the last shot fired. Five unused shells were also in the gun.
The defendant was the primary witness called by the defense and presented a different account of the events. The defendant first disputed Mrs. Shinn's rendition of the fight that occurred before she left the marital residence. He admitted hitting his wife in the face, but denied threatening to burn her. Instead, the defendant insisted that he threatened to burn the couple's home down if she left him and also threatened to shoot himself. As for the night of the shooting, the defendant testified that he became angry when he discovered that a dog was missing. Despite admittedly being intoxicated, the defendant drove around trying to find Mrs. Shinn until he saw her car in front of a trailer near Mr. Place's house. He walked into the trailer, taking a gun with him because he "just thought if I had a gun, I could express myself more." The defendant testified that when he got into the house, he started yelling at Mrs. Shinn about the dog and followed her as she walked toward the back bedroom. When he got to the last room of the trailer, he "got jumped from behind by Sonny," who immediately confessed to his affair with Mrs. Shinn. The defendant testified that the men struggled for the gun "for a minute or two" and that the weapon fired when Sonny was pulling it out of his hands. The defendant insisted that the gun went off while both men were laying on the ground wrestling for it. He denied having any intent to kill Mrs. Shinn and testified that he thought of killing himself after the shooting.
During cross-examination, the defendant denied pointing the gun at Mrs. Shinn and denied cocking the gun's hammer back. The defendant speculated that the hammer must have cocked during his struggle with Mr. Place. The defendant also believed that the bullet must have traveled in an upwards trajectory after being fired from the ground, where he and Mr. Place wrestled for the weapon. The defendant testified that he let go of the gun after it fired because he heard Mrs. Shinn scream.
The jury returned guilty verdicts on both the attempted murder and felonious assault charges. The jury also found that the defendant committed each offense with a firearm. At his sentencing hearing, the defendant argued that attempted murder and felonious assault were allied offenses within the meaning of R.C. 2941.25. Thus, he argued that the state was required to elect which of the two charges it wanted the court to sentence him upon. The trial court rejected this argument and sentenced the defendant to two years imprisonment for the felonious assault and five years for the attempted murder. The court also imposed a mandatory term of three years for the gun specification. See R.C.2929.14 (D) (1) (a) (i). The court ordered the felonious assault and attempted murder sentences served concurrently, but ordered the gun specification served prior and consecutive to the five-year attempted murder sentence. See R.C. 2929.14 (E) (1). Thus, the court imposed a total prison term of eight years. The court also ordered the defendant to pay restitution and forfeit his handgun.
The defendant commenced an appeal from his convictions. The state also appealed, challenging the trial court's dismissal of the aggravated burglary count that was alleged in the indictment. See R.C. 2945.67 (A) (state has appeal of right from dismissal of all or any part of indictment). We sua sponte consolidated the appeals. State v. Shinn (Sept. 27, 1999), Washington App. Nos. 99CA29, 99CA35, unreported (entry consolidating the appeals).
 II.
We start with the state's appeal in case 99CA29. The state contends that the trial court erred in dismissing count one of the indictment, alleging aggravated burglary, based on an application of R.C. 3103.04 to negate an essential element of the offense. The state's appeal presents a legal issue, which we review de novo.
R.C. 2911.11 (A) defines the offense of aggravated burglary and states:
 No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 (1) The offender inflicts, or attempts to inflict physical harm on another;
 (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.
(Emphasis added.)
The indictment alleged a violation of both R.C. 2911.11 (A) (1) and (A) (2). In his motion to dismiss the aggravated burglary count, the defendant argued that the state could not establish the "trespass" element as a matter of law. The defendant relied on R.C. 3103.04, which states:
 Neither husband nor wife has any interest in the property of the other, except as mentioned in section 3103.03 of the Revised Code, and the right to remain in the mansion house after the death of either. Neither can be excluded from the other's dwelling, except upon a decree or order of injunction made by a court of competent jurisdiction.
(Emphasis added.)
Based on this statute, the defendant argued that the state could not establish, the "trespass" element of aggravated burglary because his entry was privileged as a matter of law. He and Mrs. Shinn were still married at the time of the alleged offense and no court order excluded him from Mrs. Shinn's home. The trial court apparently agreed with the defendant's argument and dismissed the aggravated burglary count. The state asserts that the dismissal was erroneous because any "privilege" granted by R.C. 3103.04 is limited to the couple's marital home. Because the defendant entered Mrs. Shinn's home on the night in question, and not the couple's marital dwelling, the state argues that it is not precluded from establishing aggravated burglary. We agree with the state, but for different reasons. In light of a recent decision by the Ohio Supreme Court, the defendant simply cannot rely upon R.C. 3103.04 as a defense to aggravated burglary.
In State v. Lilly (1999), 87 Ohio St.3d 97, the Ohio Supreme Court expressly held that R.C. 3103.04 is inapplicable in criminal cases. Id. at paragraph two of the syllabus. The court reasoned that R.C. 3103.04 "was intended to address ownership rights of married persons, matters of a civil nature." Id. at 102. Thus, a spouse "may be criminally liable for trespass and/or burglary in the dwelling of the other spouse who is exercising custody or control over that dwelling." Id. at paragraph one of the syllabus; see, also, State v. O'Neal (2000), 87 Ohio St.3d 402,407 (following Lilly to uphold husband's conviction for aggravated burglary of spouse's home). Thus, the defendant cannot rely upon R.C. 3103.04 to negate a charge of aggravated burglary as a matter of law.[1] While the trial court did not have the benefit of Lilly to guide its decision, the state's appeal has merit.[2]
Accordingly, we sustain the state's assignment of error.
 III.
We turn to the defendant's appeal in case 99CA35. In his first two assignments of error, the defendant argues that the jury verdicts were against the manifest weight of the evidence. He contends that the evidence adduced at trial was too weak to support a finding that he intended to either kill or harm Mrs. Shinn. We disagree.
An allegation that a jury verdict is against the manifest weight of the evidence requires us to assess whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy
(1998), 84 Ohio St.3d 180, 193. The reviewing court assumes the role of a "`thirteenth juror' and [may] disagree with the fact finder's resolution of conflicting testimony." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, quoting Tibbs v. Florida (1982),457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652. In conducting this review, the reviewing court must examine the entire record and consider the credibility of witnesses, keeping in mind that the jury is generally better-suited to resolve credibility issues. State v. Thomas (1982), 70 Ohio St.2d 79, 80;State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The reviewing court may reverse a conviction only if it appears that the jury "`clearly lost its way, creating such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins at 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. We will not,
however, overturn a conviction if the state presented substantial evidence upon which the jury could have reasonably concluded, beyond a reasonable doubt, that all the essential elements of the charged offenses were established. State v. Eskridge (1988),38 Ohio St.3d 56, paragraph two of the syllabus.
The crux of the defendant's argument is that the evidence concerning his intent to either kill or harm Mrs. Shinn was "sparse, at best, unreliable, and speculative." Although the defendant acknowledges that he brought a gun to Mrs. Shinn's home, he disclaims any intent to fire the weapon at Mrs. Shinn. The defendant contends that the gun discharged accidentally while he and Mr. Place fought for it. In light of the evidence adduced at trial, however, we are unable to conclude that the jury "clearly lost its way" in finding the defendant guilty of attempted murder and felonious assault.
A person commits attempted murder when he purposely engages in conduct that, if successful, would result in the purposeful killing of another person. See R.C. 2903.02 (A) and 2923.02 (A); see, also, State v. Fox (1981), 68 Ohio St.2d 53, 55. Thus, to commit attempted murder, the defendant must intend to kill his victim. See R.C. 2901.22 (A) (defining "purposely" as the "specific intention to cause a certain result"). The jury may infer the requisite intent to kill "where the natural and probable consequences of a defendant's action is to produce death and the jury may conclude, from all the surrounding circumstances, that the defendant had an intention to kill."State v. Caldwell (1992), 79 Ohio App.3d 667, 668; see, also,State v. Clark (1995), 101 Ohio App.3d 389, 405 (intent must ordinarily be proven by reference to surrounding facts and circumstances)
Although the defendant disclaims any intent to kill, the jury had ample evidence to conclude otherwise. The defendant barged into Mrs. Shinn's home carrying a loaded .44 Magnum handgun and pointed the weapon directly at Mrs. Shinn. Mr. Place heard a distinct "clicking" sound before he attempted to subdue the defendant, indicating that the defendant cocked the weapon's hammer. The jury therefore had evidence that the defendant pointed a weapon at Mrs. Shinn and prepared to fire it. Finally, the jury heard Mrs. Shinn testify that the defendant threatened to burn her and their home just three days before the shooting. Although the defendant denied threatening his wife, the jury could have believed Mrs. Shinn's version of the couple's fight. Those threats, coupled with the defendant's act of bringing a loaded weapon to confront his wife, lead to a rational inference that the defendant intended to kill. Although the appellant later expressed regret for shooting his wife and referred to the incident as an accident and a mistake, the jury was in the better position to weigh the credibility of the defendant's post hoc
remorse. The circumstances surrounding the incident support the jury's conclusion that the defendant harbored the intent to kill.
We also find no merit to the defendant's argument that the jury could not have found the requisite intent for felonious assault. Unlike attempted murder, felonious assault does not require a defendant to act purposely. Rather, the defendant commits a felonious assault when he "knowingly" causes or attempts to cause physical harm by means of a deadly weapon or dangerous ordnance. R.C. 2903.11 (A) (2). "Knowledge" is a less-culpable mental state than "purpose" and is satisfied when a person "is aware that his conduct will probably cause a certain result * * *." R.C. 2901.22
(B). Proof of an offender's purpose in committing an attempted murder is sufficient to prove the requisite mental state for felonious assault. See State v. Nelson (1996), 122 Ohio App.3d 309,314. Thus, the presence of substantial evidence to find that the defendant intended to kill also supports the conclusion that he acted "knowingly" in harming Mrs. Shinn. Further, simply the defendant's action of pointing a loaded firearm at Mrs. Shinn and cocking the hammer provided enough evidence for the jury to conclude that he intended to cause physical harm. See State v.Green (1991), 58 Ohio St.3d 239, 241-42; see, also, State v.Brooks (1989), 44 Ohio St.3d 185, 192 (reasonable jury could convict defendant for felonious assault for pointing gun and either firing or attempting to fire it at victim).
In addition, the defendant attacks the jury's conclusion that he actually cocked the hammer and fired the weapon at Mrs. Shinn. The defendant denies doing either, insisting that the gun discharged as he and Mr. Place were on the floor wrestling for it. The defendant urges us to conclude that Mr. Place's trial testimony suggesting that the defendant cocked the hammer and fired the weapon was "clearly unreliable," particularly because his testimony at trial was different than previous testimony at a preliminary hearing. The defendant's argument is without merit.
The prosecution and the defense presented differing accounts of the shooting. The prosecution's theory, supported by Mrs. Shinn's and Mr. Place's testimony, was that the defendant pointed the weapon at Mrs. Shinn, cocked the hammer, and fired just as Mr. Place grabbed him from behind. The defendant, on the other hand, insisted that he did not fire the weapon intentionally. He contended that the hammer must have cocked when he and Mr. Place wrestled for the gun and that the weapon fired when the two men were on the floor. Despite the defendant's pleas to the contrary, the jury had a substantial basis for believing the prosecution's version over the defense's version.
The defendant rests much of his argument on the notion that Mr. Place's testimony about the hammer and gunshot was "clearly unreliable." We decline the defendant's invitation to discount Mr. Place's testimony. The jury was in the best position to hear his testimony and decide its weight and credibility. State v.Garrow (1995), 103 Ohio App.3d 368, 371. The jury was free to disbelieve all, part, or none of his testimony, as well as the defendant's testimony about the shooting. State v. Nichols
(1993), 85 Ohio App.3d 65, 76. Further, the forensics evidence gathered by the Washington County Sheriff's Office cast serious doubt upon the defendant's version of the events. Detective Kinzel's testimony indicated that only one bullet was fired, i.e.
the shot that wounded Mrs. Shinn. His analysis of the bullet holes' positions suggested that the bullet traveled basically parallel to the ground at a height of forty to forty-two inches. This conclusion was inconsistent with the defendant's testimony that the gun fired while he and Mr. Place wrestled on the ground. If the defendant's version was correct, the bullet would have traveled in an upwards trajectory, which presumably would have resulted in bullet holes in different positions than those found at the scene. Thus, the jury had further reason to reject the defendant's story and believe Mrs. Shinn's and Mr. Place's testimony, which was consistent with the forensics evidence.
Based on the totality of the record, we cannot conclude that the jury verdicts were against the manifest weight of the evidence. The first and second assignments of error are overruled.
 IV.
The defendant's third assignment of error challenges the trial court's imposition of prison terms for both felonious assault and attempted murder. He argues that the two crimes were "allied offenses of similar import" under R.C. 2941.25, the multiple-count statute.[3] Because his two convictions were for "the same conduct, of brandishing a weapon, which went off, shooting his wife in the arm," the defendant argues that the state should have been forced to elect between the two offenses for sentencing purposes.
In State v. Rance (1999), 85 Ohio St.3d 632, the Ohio Supreme Court established the applicable analysis for determining whether the multiple-count statute prohibits separate punishment for two offenses. The first step is to determine whether the offenses are "allied offenses of similar import" within the meaning of R.C.2941.25. Two offenses are "allied" if the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other * * *'." Id. at 636, quoting State v. Jones (1997), 78 Ohio St.3d 12, 13; see, also,State v. Blankenship (1988), 38 Ohio St.3d 116, 117. If not, the court's inquiry ends. The crimes are considered offenses ofdissimilar import and the defendant may be convicted (i.e. found guilty and punished) for both. Rance at 636, citing R.C. 2941.25
(B). If the elements do correspond in the manner described, the court must proceed to a second step. The defendant's conduct is reviewed to determine if the crimes were committed separately or with a separate animus for each crime; if so, the defendant may be convicted of both. See Jones at 14; Blankenship at 117.
In undertaking the first step of the analysis, Rance expressly held that the court must contrast the elements of the offenses inthe abstract. Rance at paragraph one of the syllabus. In other words, the court must look at the statutory elements of the crimes involved without considering the particular facts of the case. Id. at 636-38. When analyzing the elements of felonious assault (under R.C. 2903.11[A] [2]) and attempted murder in theabstract, we are forced to conclude that multiple convictions were proper under R.C. 2941.25.
As we noted previously, a defendant commits an attempted murder when he purposely engages in conduct that, if successful, would constitute a purposeful killing of another person. See R.C.2903.02 (A) and 2923.02 (A). In contrast, a defendant commits a felonious assault under R.C. 2903.11 (A) (2) when he knowingly causes or attempts to cause physical harm to another by means of a deadly weapon or dangerous ordnance. See State v. Green, supra,58 Ohio St.3d at 240. These crimes differ in at least three respects. First, attempted murder requires the offender to act "purposely," whereas felonious assault requires the less-culpablemens rea of acting "knowingly." Thus, one who acts "knowingly" has the requisite mental state for felonious assault, but cannot be convicted of attempted murder. Second, attempted murder requires an attempt to cause the death of another person, an element not required to prove felonious assault. Finally, an offender commits a felonious assault under R.C. 2903.11 (A) (2) if he uses a deadly weapon or dangerous ordnance. Conversely, the offense of attempted murder may be committed without use of a weapon.
Based on this abstract comparison of the two crimes, it does not appear that the statutory elements "correspond to such a degree that the commission of one crime will result in the commission of the other." Rance, 85 Ohio St.3d at 638. A person could attempt to kill without using a deadly weapon or dangerous ordnance, thereby precluding a felonious assault under R.C.2903.11 (A) (2). On the other hand, a person could commit a felonious assault without intending to cause the victim's death, precluding a finding of attempted murder. The crimes are therefore offenses of dissimilar import under R.C. 2941.25 (B), meaning that the defendant was properly convicted of both. AccordState v. Nelson (Jan. 12, 2000), Tuscarawas App. No. 1999AP02 0007, unreported; see also, State v. Mathis (June 30, 1999), Summit App. No. 19036, unreported, and State v. Swan (Oct. 9, 1991), Hamilton App. No. C-900655, unreported (holding that attempted murder and felonious assault are not allied).[4]
We are aware of the practical result of our conclusion: the appellant stands convicted of both assaulting and attempting to kill his wife for the very same act of shooting her. While this result seems intuitively wrong, the Supreme Court's holding inRance forces us to affirm the appellant's convictions for both felonious assault and attempted murder. The third assignment of error is overruled.
 V.
The defendant's fourth assignment of error challenges the five-year prison sentence imposed by the court for the attempted murder conviction. Because he had not previously served a prison term, the defendant argues that R.C. 2929.14 (B) required that the trial court impose the minimum sentence for attempted murder,i.e. three years, unless it found that the minimum term would be inadequate.[5] The defendant argues that the court failed to make the required finding and therefore imposed a sentence that is contrary to law. See R.C. 2953.08 (A) (4) (defendant has appeal of right for sentence that "is contrary to law").[6] Our review of the record leads us to reluctantly agree.
Felony sentences must comply with the overriding purposes of sentencing, which include the dual purposes of punishing the defendant and protecting the public from future crimes by the defendant. R.C. 2929.11 (A); see, also, State v. McConnaughey
(Mar. 4, 1998), Athens App. No. 97CA39, unreported. The trial court must also impose a sentence that is commensurate with, and not demeaning to, the seriousness of the defendant's conduct and the impact on the victim. R.C. 2929.11 (B). If a court elects or is required to impose a prison sentence (as opposed to community-control sanctions) on an offender who has not previously served a prison term, it must ordinarily impose the shortest authorized prison sentence. See R.C. 2929.14 (B). The court may impose a prison term longer than the minimum only if it finds, on the record, that the shortest prison term will either (1) demean the seriousness of the offender's conduct, or (2) not adequately protect the public from future crime by the defendant or others.Id. A reviewing court may vacate or modify a sentence if it "clearly and convincingly" finds that the sentence is unsupported by the record or is contrary to law. R.C. 2953.08 (G) (1) (a) and (d).
Before sentencing the defendant, the trial court considered a pre-sentence investigation report, as required by R.C. 2929.19
(B) (1). See State v. Lenegar (Feb. 3, 1999), Vinton App. No. 98CA521, unreported. Although the report disclosed a number of prior misdemeanor offenses, there was no indication that the defendant had ever served a prison term. Thus, the court was under a mandatory duty to impose the shortest possible prison term for attempted murder (three years) unless it found on the record that the shortest term would either demean the seriousness of the defendant's actions or not adequately protect the public from future crimes. R.C. 2929.14 (B).[7] Although the sentencing court is not obligated to give specific reasons for finding the shortest prison term inappropriate, "the court must note that it engaged in the analysis [of R.C. 2929.14 (B)] and that it varied from the minimum for at least one of the two sanctioned reasons." State v. Edmonson (1999), 86 Ohio St.3d 324,326.
The record in this case does not show that the court engaged in the required analysis before varying from the minimum sentence for attempted murder. Neither the sentencing entry nor the transcript from the sentencing hearing discloses any consideration of R.C. 2929.14 (B). The court noted that it had considered other sentencing statutes, including R.C. 2929.11 and R.C. 2929.12, in determining that imprisonment was the appropriate punishment for the defendant's conduct. The court also stated in the sentencing entry that "the sentence imposed is reasonably calculated to achieve these purposes [of felony sentencing], and is commensurate with and does not demean the seriousness of the offenders [sic] conduct and its impact upon the victim, and is consistent with sentences imposed for similar crimes committed by similar offenders." While the court's remarks suggest that imprisonment was the appropriate penalty, they donot specify either of the reasons listed in R.C. 2929.14 (B) in support of a prison term longer than the minimum. The sentencing court does not comply with R.C. 2929.14 (B) unless "the record of the sentencing hearing [reflects] that the court found either or both of the two statutorily sanctioned reasons for exceeding the minimum term * * *." Edmonson at 326. With this type of record, "there is no confirmation that the court first considered the minimum three-year sentence and then decided to depart from the statutorily-mandated minimum based on one or both of the permitted reasons." Id. at 328.
Finally, we reject the state's contention that the appellant waived any sentencing irregularity by failing to object to the sentence imposed by the trial court. Under Crim.R. 52 (B), we may notice "plain errors or defects affecting substantial rights" even when a defendant fails to object. In the absence of proper statutory findings, the trial court imposed a sentence that is contrary to law. See Edmonson at 329. An illegal sentence would result in plain error. See State v. Northam (Sept. 24, 1998), Franklin App. Nos. 98AP-184, 98AP-185, unreported; State v.Jordan (Oct. 6, 1997), Butler App. No. CA97-04-084, unreported. Accordingly, we sustain the fourth assignment of error, vacate the defendant's sentence for attempted murder, and remand for re-sentencing. On remand, if the court wishes to impose a sentence longer than three years for attempted murder, it must note on the record that it engaged in the analysis required by R.C. 2929.14
(B) and found one of the statutorily-sanctioned reasons for deviating from the minimum sentence.
 VI.
In sum, we sustain the state's assignment of error because the trial court erroneously dismissed the first count alleged in the indictment. We also sustain the defendant's fourth assignment of error and vacate his sentence for attempted murder because the court failed to make the findings required by R.C. 2929.14 (B) before imposing a prison term longer than the minimum. The defendant's remaining assignments of error are overruled.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that the Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
Abele, J. Evans, J.: Concur in Judgment and Opinion.
 ________________________ William H. Harsha, Judge
[1] Curiously, neither party cites Lilly, despite the fact that the Ohio Supreme Court announced the decision over one month before the briefs were due in this case. The parties instead attempt to rely upon or distinguish cases where various courts of appeal, including this one, held that R.C. 3103.04 prevented one spouse from being convicted for burglary and/or trespass against the other spouse. See, e.g., State v. Middleton (1993), 85 Ohio App.3d 403, and State v. Herder (1979), 65 Ohio App.2d 70; see, also, State v. Brooks (1995), 101 Ohio App.3d 260, 268. In light of Lilly, of course, cases applying R.C. 3103.04 in the criminal context (including this court's decision in Middleton) are impliedly overruled.
[2] In light of our reversal of the trial court's erroneous dismissal, the state may choose to pursue a conviction on the aggravated burglary count. This possibility raises a potential double-jeopardy issue, i.e. whether the double jeopardy clauses of the United States and Ohio constitutions bar a subsequent trial on the previously-dismissed count. But, cf., Serfass v.United States (1975), 420 U.S. 377, 95 S.Ct. 1055,43 L.Ed.2d 265; State v. Larabee (1994), 69 Ohio St.3d 357. Neither party has raised a double-jeopardy issue on this appeal. Some appellate courts have sua sponte raised the issue of a potential double-jeopardy bar on the basis that it would be plain error to remand a matter that is otherwise barred by double-jeopardy principles. See, e.g., State v. Broughton (1991), 62 Ohio St.3d 253, 262-63. However, we are not required to do so. See Broughton at 262, fn.8 ("[T]he appellate court may consider sua sponte * * * whether a potential remand would inevitably violate double-jeopardy rights." [Emphasis added.]); but, see, Akron v. Jaramillo (1994),97 Ohio App.3d 51, 55 (noting that the court was "compelled" to address the issue). Accordingly, rather than address any potential double-jeopardy bar, we leave this issue for the parties to raise (should they choose to) in the trial court in the first instance.
[3] R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
[4] But, see, State v. Williams (1996), 115 Ohio App.3d 24, 36,State v. Puckett (Mar. 27, 1998), Greene App. No. 97CA43, unreported, and State v. Gimenez (Sept. 4, 1997), Cuyahoga App. No. 71190, unreported (indicating that attempted murder and felonious assault are allied offenses). Out of all the cases we have cited above, we note that State v. Nelson, supra, is the only one decided after Rance that addresses whether attempted murder and felonious assault are allied offenses of similar import.
[5] Attempted murder is a felony of the first degree. See R.C.2923.02 (E). First-degree felonies are punishable by prison terms of three, four, five, six, seven, eight, nine, or ten years. R.C.2929.14 (A) (1).
[6] The defendant does not indicate the basis upon which he invokes our jurisdiction to review his sentence. He argues only that the trial court imposed a prison term longer than the minimum without making the required statutory findings. Accordingly, we find that this case is properly before us as a R.C. 2953.08 (A) (4) appeal of right, arguing that the trial court imposed a sentence that is contrary to law, i.e. not in accordance with statute. See Griffin Katz, Ohio Felony Sentencing Law (1999 Ed.) 534, Section T9.7 ("trial court's failure to adhere to dictates of * * * R.C. 2929.11 to R.C.2929.19 imposes a sentence that is contrary to law").
[7] R.C. 2929.14 (B) provides an exception for certain offenses, including murder, rape, and certain drug offenses. For these enumerated offenses, a trial court need not impose the shortest possible prison sentence authorized by R.C. 2929.14 (A). There is no such exception, however, for attempted murder.