**[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 97.]**

THE STATE OF OHIO, APPELLANT, *v.* LILLY, APPELLEE.

**[Cite as *State v. Lilly*, 1999-Ohio-251.]**

*Criminal law—Domestic relations—Husband and wife—Interest in property of the other—Spouse may be criminally liable for trespass and/or burglary in the dwelling of the other spouse who is exercising custody or control over that dwelling—R.C. 3103.04 is inapplicable in criminal cases.*

1. A spouse may be criminally liable for trespass and/or burglary in the dwelling of the other spouse who is exercising custody or control over that dwelling.

2. R.C. 3103.04 is inapplicable in criminal cases.

(No. 98-1111—Submitted March 31, 1999—Decided October 20, 1999.)

APPEAL from the Court of Appeals for Montgomery County, No. 16684.

————————————

**{¶ 1}** On February 5, 1997, Harold Dean Lilly, Jr., defendant-appellee, was indicted on nineteen criminal counts: twelve counts of rape, two counts of attempt to commit rape, three counts of possessing criminal tools, one count of kidnapping, and one count of burglary. All offenses were alleged to have been against his estranged wife, Jacqueline K. Lilly. Count nineteen of the indictment stated that on or about January 26, 1997, defendant had trespassed in Jacqueline Lilly's residence when she was present or likely to have been present, with the purpose of committing a criminal offense therein. Defendant pled not guilty on February 11, 1997 to all of the charges.

**{¶ 2}** Defendant and Jacqueline K. Lilly ("Mrs. Lilly") married in August 1988. They separated in early 1996 and got back together in September of that year. In November 1996, they separated again and Mrs. Lilly moved in with defendant's sister. Mrs. Lilly lived with defendant's sister until January 1997, when

she leased an apartment in West Carrollton, Ohio. Defendant and Mrs. Lilly's only child, Harold Dean Lilly III ("DJ"), lived with his mother, Mrs. Lilly, at her apartment. Defendant moved in with his own mother after the couple separated.

{¶ 3} Mrs. Lilly testified that on January 26, 1997, she and the defendant spent the morning and afternoon together doing various errands. The defendant repeatedly asked Mrs. Lilly if they could watch the Super Bowl that evening together, but she declined. Mrs. Lilly testified that over the course of the evening, defendant asked her to have sex with him and she asked him to leave. She told the jury that defendant became angry, slapped her repeatedly, and burned her with a cigarette. She further explained that, to avoid further harm, she engaged in various sexual acts with defendant, which Mrs. Lilly testified were against her will.

{¶ 4} Mrs. Lilly testified that later in the evening, the defendant drove her to two bars. At the 1470 Club, in Kettering, Ohio, Mrs. Lilly quietly asked one of the bar employees to call the police. After defendant followed her into the women's restroom at the bar, one of the bar's security guards went into the restroom to check on Mrs. Lilly. The security guard told defendant that he wanted to speak to Mrs. Lilly alone and defendant refused. The security guard pushed defendant out of the way while Mrs. Lilly and a female bar employee ran into the back office and locked the door. After the defendant's attempts to kick the door in were unsuccessful, he fled.

{¶ 5} Mrs. Lilly was taken to the hospital to be examined and then to the police station to be interviewed in the early morning hours of January 27. Police officers then took her to her apartment to get some clothing and personal items in order for her to stay in a shelter. At her apartment, Mrs. Lilly discovered that her purse was missing and about six pairs of her jeans had been ripped up. Officers noticed that the attic cover was open. When officers walked into the attached garage, they smelled fresh cigarette smoke.

{¶ 6} After Mrs. Lilly had collected her belongings and was ready to get in

her car, she discovered that her automatic garage door opener was missing from her car. She tried to start her car, and when it would not start, officers investigated and found that the car's spark plug wires had been detached. In addition, Mrs. Lilly noticed a pair of defendant's gym shoes that were not there previously. At approximately 8:00 a.m. on January 27, officers drove Mrs. Lilly to a shelter.

{¶ 7} Detective Mark Allison testified that on the afternoon of January 27, he informed defendant that a warrant had been issued for his arrest. The next day, Detective Allison interviewed defendant in the presence of two other detectives regarding the charges. Defendant admitted to the officers that he drove back to Mrs. Lilly's apartment in the early morning of January 27 after leaving the 1470 Club. Mrs. Lilly later testified that she had locked the door when she left the evening of January 26, but that it was unlocked when she arrived with police the next morning. Defendant stated that he had left the door unlocked prior to leaving with Mrs. Lilly earlier in the evening so he could get back in. Defendant told the detectives that he ripped up several pairs of Mrs. Lilly's jeans, yanked the spark plug wires on her car, and took her purse. Defendant stated that he arrived at the apartment around 12:30 a.m. on January 27, after leaving the bar and was there until 12:00 p.m. that day. Defendant admitted that he was hiding at the apartment when police searched it.

{¶ 8} At trial, Mrs. Lilly testified that the lease for her apartment was in her name and the defendant did not have a key. Mrs. Lilly testified that defendant did not contribute money for her apartment. She further testified that defendant knew that it was her place.

{¶ 9} During the trial, the state withdrew one count of rape and one count of attempted rape. The jury returned a verdict of guilty on the burglary charge (in violation of R.C. 2911.12[A][2]) and not guilty on the remaining charges. Defendant appealed his burglary conviction, and the Montgomery County Court of Appeals reversed the trial court's conviction, finding that R.C. 3103.04 negated the

state's proof of the element of trespass as a matter of law.

{¶ 10} This cause is now before this court upon the allowance of a discretionary appeal.

———————————

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, *John J. Amarante* and *Cheryl A. Ross*, Assistant Prosecuting Attorneys, for appellant.

*Altick & Corwin Co., L.P.A.*, and *Dennis J. Adkins*, for appellee.

———————————

**LUNDBERG STRATTON, J.**

{¶ 11} This case presents the court with the question of whether R.C. 3103.04 precludes prosecution of one spouse for burglary committed in the residence of the other spouse. For the reasons that follow, we hold that a spouse may be criminally liable for trespass and/or burglary in the dwelling of the other spouse who is exercising custody or control over that dwelling. R.C. 3103.04 is inapplicable in criminal cases.

{¶ 12} In this case, the evidence showed that defendant entered by deception the separately leased property of his estranged spouse with intent to commit a crime. However, the court of appeals concluded that in the absence of a court order, R.C. 3103.04 prevented Mrs. Lilly from excluding defendant from her apartment and therefore the element of trespass could not be proven. Although the defendant did not raise this alleged R.C. 3103.04 privilege in the trial court, the court of appeals, nevertheless, found that it amounted to plain error.[1] We disagree with the court of appeals' application of R.C. 3103.04 to this case.

{¶ 13} At common law, husband and wife were regarded as one. The legal

---

1. Some Ohio appellate courts, including the court in this case, have applied R.C. 3103.04 in criminal contexts. See, *e.g.*, *State v. Brooks* (1995), 101 Ohio App.3d 260, 655 N.E.2d 418; *State v. Middleton* (1993), 85 Ohio App.3d 403, 619 N.E.2d 1113; and *State v. Herder* (1979), 65 Ohio App.2d 70, 19 O.O.3d 47, 415 N.E.2d 1000.

existence of the wife during coverture was merged with that of her husband. As such, the wife was incapable of making contracts, of acquiring property, or of disposing of property without her husband's consent. In pursuance of a more liberal policy in favor of the wife, statutes were passed across the country to relieve the married woman from the disabilities imposed upon her as a femme covert by the common law. See *Thompson v. Thompson* (1910), 218 U.S. 611, 614-615, 31 S.Ct. 111, 54 L.Ed. 1180, 1181.

{¶ 14} Ohio's Married Women's Act was enacted in 1861. 58 Ohio Laws 54. "By the act concerning the rights of married women, passed April 3, 1861 (S. & S. 389), as amended March 23, 1866 (S. & S. 391), the *general estate*, as well as the *separate estate*, of a married woman, belonging to her at her marriage, and all her estate, legal and equitable, which may come to her during coverture, by conveyance, gift, devise, or inheritance, or by purchase with her separate means or money, together with the rents and issues thereof, becomes her *separate* property and under her control, free from the marital rights of the husband at common law over the same." *Levi v. Earl* (1876), 30 Ohio St. 147, paragraph one of the syllabus.

{¶ 15} In that same vein, in 1887, the General Assembly enacted what is now R.C. 3103.04 to "define the rights and liabilities of husband and wife." 84 Ohio Laws 132. The Act related both to the relationship between husband and wife and to the rights of each in the property of the other. The 1887 Act contained the exclusion at issue in this case:

"Section 3111. Neither husband nor wife has any interest in the property of the other, except as mentioned in sections 3110 [husband must support himself and wife] and 4188 [dower] but neither can be excluded from the other's dwelling." 84 Ohio Laws 132.

{¶ 16} The statute today is reflected in R.C. 3103.04:

"[Interest in the property of the other]

"Neither husband nor wife has any interest in the property of the other,

except as mentioned in section 3103.03 of the Revised Code, the right to dower, and the right to remain in the mansion house after the death of either. Neither can be excluded from the other's dwelling, except upon a decree or order of injunction made by a court of competent jurisdiction."

{¶ 17} In 1973, the Court of Appeals for Cuyahoga County considered the history of R.C. 3103.04 and attempted to unravel the reason behind the spousal exclusion prohibition. That court determined that one plausible explanation is that the General Assembly was unfavorably influenced by the New York experience with spousal exclusions prior to 1887. *Slansky v. Slansky* (1973), 33 Ohio App.2d 127, 131-132, 62 O.O.2d 235, 237-238, 293 N.E.2d 302, 306. The *Slansky* court cited two New York cases in which married women brought ejectment actions against their husbands to recover possession of their homes. In each case, the home was owned by the wife and was previously used as the marital dwelling before the husband forced the wife out of the dwelling. See *Slansky*, 33 Ohio App.2d at 132, 62 O.O.2d at 237-238, 293 N.E.2d at 306, citing *Minier v. Minier* (N.Y.S.Ct.1870), 4 Lans. 421, and *Wood v. Wood* (App.1881), 83 N.Y. 575, 1881 WL 14707.

{¶ 18} The *Slansky* court concluded that the purpose of R.C. 3103.04 was to "limi[t] their [*i.e.,* spouses'] respective rights so that neither spouse can effect a separation, revengeful or otherwise, simply because one has full title to the marital dwelling house." *Slansky*, 33 Ohio App.2d at 137, 62 O.O.2d at 240, 293 N.E.2d at 309. Thus, one can reasonably conclude that the basis behind the spousal exclusion is the fear that one spouse would eject the other from the marital dwelling.

{¶ 19} This court, in 1893, considered the purpose of the Married Women's Act and held that "[t]he legal effect of the statutes as to the property rights of married women is to place husband and wife upon an exact equality as to the property of each; that is, 'neither husband nor wife has any interest in the property of the other,' except as to dower, distribution, and support." *Heckman v. Adams* (1893), 50 Ohio St. 305, 312, 34 N.E. 155, 156.

{¶ 20} Notably, R.C. 3103.04 is situated in the domestic relations chapter of the Revised Code. Further, a review of the 1887 Act reveals that it primarily concerned property rights as they relate to domestic relations. See, *e.g.*, Section 3112 (property rights), Section 3114 (taking and holding property), Section 4106 (deeds), Sections 4108 and 4109 (powers of attorney), Sections 4163-4177 (descent and distribution), Sections 4188-4194 (estates in dower). 84 Ohio Laws 132-136.

{¶ 21} A review of other jurisdictions reveals seven other jurisdictions with a statute similar to R.C. 3103.04. See Cal.Fam.Code Ann. 752 and 753 (1994); Guam Code Ann., Title 19, Section 6101(h) (1993); Mont.Code Ann. 40-2-201 (1997); N.M.Stat.Ann. 40-3-3 (1994); N.D. Century Code Ann. 14-07-04 (1997); Okla.Stat., Title 43, Section 203 (1991); S.C. Cod.Laws 25-2-4 (1992). Significantly, we note that our review indicates that none of these jurisdictions applies this civil statute in criminal contexts.

{¶ 22} Thus, we conclude that R.C. 3103.04 was intended to address property ownership rights of married persons, matters of a civil nature. Privileges of a husband and wife with respect to the property of the other were not meant to be enforced criminally and do not affect criminal liabilities. See *State v. Middleton* (1993), 85 Ohio App.3d 403, 406, 619 N.E.2d 1113, 1115. Because we find that the General Assembly never intended for R.C. 3103.04 to apply in criminal contexts, we must turn to the Criminal Code to address this issue.

{¶ 23} The crime of burglary, with which defendant was charged, provides:

"(A) No person, by force, stealth, or deception, shall do any of the following:

" * * *

"(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the

habitation any criminal offense * * *." R.C. 2911.12(A)(2).

"Criminal trespass" is defined as:

"(A) No person, without privilege to do so, shall do any of the following:

"(1) Knowingly enter or remain on the land or premises of another." R.C. 2911.21.

{¶ 24} The law of burglary evolved out of a desire to protect the habitation. Because intrusions into the habitation are dangerous to occupants, "the offense is viewed as serious, because of the higher risk of personal harm involved in maliciously breaking and entering an occupied, as opposed to an unoccupied, structure." 1974 Legislative Service Commission Comment to R.C. 2911.12.

{¶ 25} Because the purpose of burglary law is to protect the dweller, we hold that custody and control, rather than legal title, is dispositive. See R.C. 2911.21(E), providing that " 'land or premises' includes any land, building, structure, or place belonging to, *controlled by, or in custody of another*, and any separate enclosure or room, or portion thereof." (Emphasis added.) Thus, in Ohio, one can commit a trespass and burglary against property of which one is the legal owner if another has control or custody of that property.

{¶ 26} A majority of other jurisdictions that have addressed this issue have found that the entry of an estranged spouse upon the property of the other spouse constitutes an unauthorized entry to support charges of trespass and burglary. See *People v. Johnson* (Colo.1995), 906 P.2d 122; *People v. Hollenbeck* (Colo.App.1996), 944 P.2d 537; *Davis v. State* (Tex.Crim.App.1990), 799 S.W.2d 398; *White v. State* (Ala.Crim.App.1990), 587 So.2d 1218; *Parham v. State* (1989), 79 Md.App. 152, 161-162, 556 A.2d 280, 284-285; *Matthews v. Commonwealth* (Ky.1985), 709 S.W.2d 414; *State v. Cox* (1985), 73 N.C.App. 432, 326 S.E.2d 100; *Knox v. Commonwealth* (1983), 225 Va. 504, 304 S.E.2d 4; *State v. Schneider* (1983), 36 Wash.App. 237, 673 P.2d 200; *Cladd v. State* (Fla.1981), 398 So.2d 442.

{¶ 27} Civil, peaceful avenues of redress exist to enforce the rights of a

person who believes he or she has been wrongfully excluded from certain property. There is no privilege to use force, stealth, or deception to regain possession. See R.C. 2911.21(C) ("It is no defense to a charge under this section that the offender was authorized to enter or remain on the land or premises involved, when such authorization was secured by deception.").

{¶ 28} In this case, there is no evidence that defendant had any right to custody or control of the leased property. The apartment was leased solely in Mrs. Lilly's name. Defendant did not pay any part of the rent on Mrs. Lilly's apartment. While defendant claims that he may have stayed at the apartment occasionally and performed maintenance tasks there for Mrs. Lilly, defendant never lived at the apartment, did not have a key to the apartment, and did not keep any of his belongings in the apartment. Accordingly, it was reasonable for the jury to find that when, without permission, defendant entered Mrs. Lilly's apartment through a door he had previously by deception left unlocked, he trespassed. When he trespassed in Mrs. Lilly's apartment for the purpose of committing a crime, *i.e.,* theft of her purse and damage to her property, it was reasonable for the jury to conclude that defendant committed a burglary.

{¶ 29} Thus, there was ample evidence at trial for the jury to have determined that the defendant trespassed in Mrs. Lilly's dwelling and that he did so with the purpose or intent of committing a crime. Sufficiency of the evidence is considered in a light most favorable to the prosecution. *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. As such, we find that there was sufficient evidence of burglary to sustain his conviction. Therefore, we reverse the judgment of the court of appeals and reinstate defendant's conviction for burglary under R.C. 2911.12(A)(2).

*Judgment reversed*
*and cause remanded.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS, J., concurs in judgment.

COOK, J., concurs in judgment only.

MOYER, C.J., concurs in part and dissents in part.

_____

**COOK, J., concurring in judgment only.**

{¶ 30} I disagree with the majority's decision to address the applicability of R.C. 3103.04, since Lilly waived the issue by failing to raise it in the trial court. The court of appeals, on the strength of "plain error," allowed the defendant to introduce, on appeal, the concept that he had a spousal privilege to enter his wife's dwelling. The appellate court held that "[c]onvicting Lilly of a burglary offense, where, because of the operation of R.C. 3103.04, the trespass element of that offense had not been established, constituted a miscarriage of justice * * * [and] Lilly's burglary conviction upon insufficient evidence was plain error."

{¶ 31} Appellate courts may only invoke the plain error doctrine "with the utmost caution, under exceptional circumstances." *State v. Long* (1978), 53 Ohio St.2d 91, 97, 7 O.O.3d 178, 181, 372 N.E.2d 804, 808. Plain error is "obvious error prejudicial to a defendant, neither objected to nor affirmatively waived by him, which involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. The error must be obvious on the records, palpable, and fundamental, and in addition it must occur in exceptional circumstances where the appellate court acts in the public interest because the error affects 'the fairness, integrity or public reputation of judicial proceedings.' " *State v. Craft* (1977), 52 Ohio App.2d 1, 7, 6 O.O.3d 1, 4, 367 N.E.2d 1221, 1225-1226, quoting *United States v. Atkinson* (1936), 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555, 557. I would find that this was not plain error. Even if R.C. 3103.04 would have obviated the element of trespass so as to aid Lilly's defense, the failure to raise the issue decides the case.

————————————

**MOYER, C.J., concurring in part and dissenting in part.**

{¶ 32} I concur in the first paragraph of the syllabus and the judgment. I do not concur in the discussion of R.C. 3103.04 and the second paragraph of the syllabus for the reasons stated in the concurrence of Justice Cook.

————————————