OPINION
Defendant-appellant Dosby Mason appeals his convictions and sentences entered by the Stark County Court of Common Pleas on one count of burglary, in violation of R.C. 2911.12; and one count of domestic violence, in violation of R.C. 2919.25(A), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On August 14, 2000, the Stark County Grand Jury indicted appellant on one count of aggravated burglary, in violation of R.C. 2911.11; one count of kidnaping, in violation of R.C. 2905.01; one count of burglary, in violation of R.C. 2911.12; one count of robbery, in violation of R.C.2911.02; and one count of domestic violence, in violation of R.C.2919.25(A). Appellant entered a plea of not guilty to all the charges at his arraignment. A jury trial commenced on October 17, 2000. The following evidence was adduced at trial.
Dawn Todd, the victim, testified she and appellant had been in a relationship for approximately six years, but the relationship ended between April and May, 2000. During the course of the relationship, Todd and appellant lived together, sharing household duties and responsibilities, as well as being involved intimately with each other. Todd stated she worked a half day on July 2, 2000, and thereafter met a few girlfriends at the Elks Lounge in Alliance. Todd agreed to give one of her friends a ride home to change her clothing. As Todd exited the lounge, she saw appellant, who was just arriving. Appellant approached Todd and asked her where she was going and whether she was returning to the lounge. Todd lied, telling him she was leaving and would not return. Todd returned to the lounge with her friend and remained there until the establishment closed at approximately 1:00 a.m. on July 3, 2000. Appellant also remained at the lounge until closing, and asked Todd for a ride home. Todd agreed, but instructed appellant to sit in the backseat of the car because she was taking one of her friends home. Todd decided to take him home first in order to avoid being alone with him. On the way, Alliance Police Officer James Hilles initiated a stop of Todd's vehicle. The officer ran Todd's license and registration. Officer Hilles advised Todd her license was suspended. The officer seized Todd's vehicle tags and impounded her car. Todd asked the officer for a ride home, but the officer refused.
Todd began to walk toward her boyfriend's house. Her girlfriend walked in the opposite direction. Appellant insisted on walking Todd home. Rather than argue with appellant, Todd decided to continue walking in hopes she could get away from him. Appellant persisted. Todd finally asked him to leave her alone because she was going to her boyfriend's house. Appellant advised Todd she was not going to her boyfriend's house, but was going to talk to him. Appellant grabbed Todd around the neck and placed her in a head lock. Todd began to cry and repeatedly asked appellant to leave her alone. Appellant refused to let Todd leave until he spoke to her. Appellant hit and grabbed Todd. At one point, while appellant was in front of her, Todd head butted him. Todd struggled to protect herself from appellant's punches, and attempted to get away from him. After appellant pushed Todd to the ground, he grabbed her leg and dragged her down the road. At some point during the assault, appellant ripped Todd's dress completely off of her body.Appellant dragged Todd to the unlit parking lot of a nearby convenience store. Appellant threatened to kill Todd, telling her nobody would know and nobody would see. Appellant then dragged Todd to an area under a railroad bridge. The struggle continued with appellant pushing Todd against a brick railroad bridge. Appellant took Todd's keys, wallet, and shoes. As Todd attempted to retrieve her keys, appellant hit her in the mouth with them, causing one of the keys to break off in Todd's lip. Appellant then threw the keys underneath the bridge.
Todd proceeded to her residence at 40 East Ely St. in Alliance, Ohio, with appellant in pursuit. Todd walked through a screen door onto an enclosed porch. When she arrived at the door of the house, she realized she did not have her keys. She turned around. Appellant stood on the porch, blocking the exit. Todd told him to go away. Appellant stated he was not leaving until Todd listened to what he had to say. Appellant pushed Todd to the ground, straddled her, and pinned down her arms. Todd tried to pull herself off the floor by grabbing a brick overhang. Appellant crushed Todd's neck against the bricks with his foot. The arguing and the wrestling continued.
Todd recalled she had left her bedroom window open. She calmed herself down. While appellant spoke, she pushed passed him, causing him to fall down two of the porch steps. Todd ran to the side of the house and jumped through the bedroom window. As appellant tried to follow her through the window, Todd leaned her back against the bed and pushed appellant back out the window with her feet. Appellant attempted to gain access into the house through the front door, and then the back door. He eventually made his way into the house through the bathroom window. Todd ran out the front door and across the street to a neighbor's house. She telephoned the police.
Officer James Hilles testified he was on routine patrol at approximately 1:18 a.m. on July 3, 2000, when he initiated a stop of Todd's vehicle. The officer ran Todd's license plate and learned Todd did not have driving privileges due to a suspension of her driver's license. Officer Hilles confiscated Todd's driver license and vehicle plates. Officer Hilles testified Todd was very cooperative and very polite during their encounter. The officer noted appellant was uncooperative and accused the officer of stopping the vehicle merely because he was in it. The officer recalled Todd was very upset with appellant, telling him to be quiet for fear she would be arrested. Todd asked the officer for a ride home, but he explained he could not because of department policy. Officer Hilles stated Todd's girlfriend walked away in one direction, while appellant and Todd walked in the opposite direction. As Officer Hilles left the scene, he passed appellant and Todd walking down the street. They appeared to be arguing.
At approximately 4:15 a.m., Officer Hilles responded to a call at 40 E. Ely St. in Alliance, Ohio. The dispatcher advised the officer an unwanted subject was present at the address. Upon his arrival, Officer Hilles encountered Todd, who was very upset and crying. Todd informed the officer appellant had beaten her the entire walk home and was still in her residence. Officer Hilles called for backup. The officers searched the residence, but appellant was gone. The officers found a broken window on the enclosed porch, and a night stand in Todd's bedroom pushed over with its contents on the floor. With respect to Todd's injuries, Officer Hilles observed bruises on the inside of her arms, scratches on her face and neck, and a cut on the inside of her lip. The officer explained Todd refused medical treatment because she had no health insurance.
Officer Mark Welch of the Alliance Police Department testified he was dispatched to Todd's residence at approximately 4:15 a.m. on July 3, 2000. Officer Hilles and another officer advised Officer Welch appellant was inside the residence. The officers searched the residence, but did not find appellant. Todd advised Officer Welch appellant had thrown her keys under the railroad bridge. The officer proceeded to the area and located the keys.Kimberly Williams testified on appellant's behalf. Williams stated she has known appellant for most of her life and has known Todd for approximately two years. Williams recalled seeing appellant and Todd at the Elks on the evening of July 2, 2000. Williams testified she was sitting at the bar when appellant entered the establishment. Appellant sat down next to her. At some point during the evening, Williams observed Todd approach appellant and ask him to join her at a table. Williams stated they did not appear to be arguing.
Nicole Armstead also testified on appellant's behalf. Armstead stated she has known both Todd and appellant for approximately six or seven years. She recalled she had babysat Todd's children from approximately 3:00 p.m. on July 2, 2000, until 10:00 the next morning. At 5:30 a.m. on July 3, 2000, Armstead was awakened by appellant's knocking at her door. She described appellant's appearance as "exhausted, out of breath." Tr. at 226. Armstead further testified appellant had blood on his white shirt and the neck of the shirt was ripped. Armstead also noticed scratches on appellant's face, arms, and back.
After hearing all the evidence and deliberations, the jury found appellant guilty of burglary, count three of the indictment, and domestic violence, count five of the indictment. The jury found appellant not guilty of the remaining charges. The trial court memorialized the jury's verdicts via Entry filed October 23, 2000. At a sentencing hearing on October 25, 2000, the trial court sentenced appellant to a term of imprisonment of four years on the charge of burglary, and six months on the charge of domestic violence. The trial court ordered the sentences be served concurrently. The trial court memorialized the sentences via Entry filed October 27, 2000.
It is from these convictions and sentences appellant appeals, raising the following assignments of error:
 THE JURY'S VERDICT OF GUILTY TO THE BURGLARY CHARGE WAS NOT SUPPORTED BY THE EVIDENCE, OR IN THE ALTERNATIVE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT TRESPASSED AT THE RESIDENCE ON 40 EAST ELY STREET.
 APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY COUNSEL'S FAILURE TO ARGUE AND ESTABLISH THAT THE STATE COULD NOT PROVE THE CHARGE OF BURGLARY BEYOND A REASONABLE DOUBT.
 I
Herein, appellant raises sufficiency of the evidence and manifest weight claims. Specifically, appellant "submits that the State did not prove that 40 East Ely Street in Alliance was not his residence at the time of the alleged burglary," and, as such, he "can not [sic] be convicted of burglarizing his own residence." Brief of Appellant at 9.
In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 Jenks, supra, at paragraph two of the syllabus.
When applying the aforementioned standard of review to the case subjudice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380,387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
R.C. 2911.12, which defines the offense of burglary, provides in Subsection (A)(2), "No person, by force, stealth, or deception, shall * * * trespass in an occupied structure * * *." A trespass occurs when a person knowingly enters or remains on the land or premises of another without privilege to do so.
In a voluntary written statement to police, appellant made the following comments:
 * * * When we arrived at 40 East Ely, where me and Miss Todd resided, Miss Todd was locked out of the house. I told her that I wanted to make sure she got into the house. She was still a little upset. * * * I was try [sic] to help Miss Todd into the home like we normal got into home when one lost their keys to the house. So I climb up to the bathroom window because Miss Todd ask [sic] me to help. I said okay. * * * So I go and get in the house so I could let her in and I walk her home at this time I'm coming down the steps. She running out the front door and run across the street to the neighbor in the green house. That's when I left to. I ran because I was scared and forgot that I had her wallet, so I returned [it] to her friend nothing missing from it and everything returned to her. The thanks I got was a scratch up face, neck and ears, bite marks on my shoulder and left side of my chest and hit with bricks in my head and knee and charge with these charges just for trying to be a gentleman.
Tr. at 186-188.
Appellant asserts his statement "where we resided" raises doubt as to whether appellant resided anywhere other than 40 E. Ely Street.
The evidence presented at trial established Todd shared the residence at 40 E. Ely St. in Alliance with her two daughters. Although Todd testified she and appellant resided together at the address for approximately six years, the two had broken up prior to the incident and Todd had a new boyfriend. Todd repeatedly testified appellant did not have her permission to be in her home on July 3, 2000. From this evidence, we find the jury could have determined appellant was a trespasser at Todd's home on July 3, 2000.
Assuming, arguendo, appellant lived at the residence for a number of years prior to the incident and still had belongings at the residence, such does not preclude the jury from finding he trespassed in the dwelling. "A spouse may be criminally liable for trespass and/or burglary in the dwelling of the other spouse who is exercising custody or control over that dwelling."[1] Although appellant's written statement to police appears to somewhat contradict Todd's testimony regarding who resided at the residence with her, her additional testimony established appellant did not have privilege to be at the property. The trier of fact was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. The jury was presented with sufficient evidence from which it could find appellant, without privilege to do so, knowingly entered or remained on the premises of Dawn Todd.
Upon our review of the entire record and our statements of facts,supra, we find the jury did not clearly lose its way so as to result in a manifest miscarriage of justice.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant claims he was denied his constitutional right to effective assistance of counsel.
The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington[2], in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different.[3]
In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential.[4] Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance.[5]
In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.[6] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[7]
Accordingly, we will direct our attention to the second prong of theStrickland test.
Appellant contends trial counsel was ineffective for failing to address the trespassing element at trial. Having found in I, supra, appellant's conviction for burglary was not against the manifest weight of the evidence because sufficient evidence was produced to establish appellant was a trespasser, we find appellant is unable to establish the second prong of the Strickland test.
Appellant's second assignment of error is overruled.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
HOFFMAN, J., EDWARDS, P.J. and, GWIN, J. Concur.
[1] State v. Lilly (1999), 87 Ohio St.3d 97, syllabus.
[2] State v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,2064, 80 L.Ed.2d 674, 673.
[3] State v. Bradley (1989), 42 Ohio St.3d 136.
[4] Id. at 142.
[5] Id.
[6] Id.
[7] Id.