OPINION
{¶ 1} Defendant-appellant, Rodger S. Pickens ("Pickens") appeals the October 4, 2007 Judgment Entry of the Court of Common Pleas, Crawford County, Ohio sentencing him to three years in prison for his conviction for Burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree.
 {¶ 2} On February 12, 2007 Pickens was indicted on one count of Burglary in violation of R.C. 2911.12(A)(2). Pickens was arraigned on February 21, 2007 and pled not guilty.
 {¶ 3} A jury trial was held on August 2, 2007, with the jury finding Pickens guilty of Burglary. Pickens was sentenced on September 27, 2007 to three years in prison.
 {¶ 4} Pickens now appeals asserting two assignments of error.
 ASSIGNMENT OF ERROR I THE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE
 ASSIGNMENT OF ERROR II APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
 {¶ 5} In his first assignment of error, Pickens argues that the jury verdict was against the manifest weight of the evidence. *Page 3 
 {¶ 6} An appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 1997-Ohio-52. In reviewing whether the trial court judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony.Id. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Andrews 3rd Dist. No. 1-05-70,2006-Ohio-3764 citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717; Thompkins, 78 Ohio St.3d at 387.
 {¶ 7} In making this determination, the Ohio Supreme Court has outlined eight factors for consideration, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness's testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary."State v. Apanovitch (1987), 33 Ohio St.3d 19, 23-24, 514 N.E.2d 394, citing State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, *Page 4 
syllabus. Ultimately, however, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin,20 Ohio App.3d at 175.
 {¶ 8} In order to convict Pickens, the state was required to prove that Pickens committed all the elements of Burglary as defined by R.C.2911.12(A)(2) as follows:
 (A) No person, by force, stealth, or deception, shall do any of the following:
 * * *
 (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense
 {¶ 9} At trial, the State called Kylie Echelberry ("Echelberry"), the victim in the present case and Pickens' former live-in girlfriend. Echelberry testified that until November 2006 Pickens had been her boyfriend. The couple had two children together during the relationship and had lived together in Echelberry's apartment for approximately a year, ending in November of 2006.
 {¶ 10} In November 2006, when the relationship ended, Echelberry asked Pickens to move out of the apartment. Pickens removed his belongings from Echelberry's apartment. Echelberry explained at trial that Pickens never had a key to her apartment. Rather, he always entered through the garage door which *Page 5 
opened from the outside when a code was entered. After Pickens moved out of the apartment, Echelberry changed the garage code so that Pickens would no longer have access to the apartment.
 {¶ 11} On January 19, 2007 Echelberry and Pickens were attempting to work out their relationship. Echelberry, Pickens and some of their friends made plans to go out to a bar together. Pickens picked Echelberry, and her friend Reva Hughes up at Echelberry's apartment. Eventually Echelberry and Pickens parted ways and Echelberry went home to her apartment along with Hughes, who spent the night in her apartment on the couch.
 {¶ 12} Echelberry testified that early on the morning of January 20, 2007 she began receiving phone calls from Pickens. When Echelberry answered the first phone call from Pickens, he asked "How did you get home, slut? Did you pick up another man at the bar?" (Tr.p. 94). Pickens then continued to call Echelberry until she turned the ringer off on her phone and went back to sleep.
 {¶ 13} Echelberry was then awakened by Pickens, who was in her bedroom, grabbing her hair, stating "Your kids are up, slut. Get up." (Tr.p. 76). Pickens continued to pull Echelberry's hair and grab at her face until she was able to calm him down. After Pickens calmed down, they brought their two children into the bedroom and continued to talk calmly. *Page 6 
 {¶ 14} While Pickens and Echelberry were talking, Pickens started going through some drawers. Pickens found a two-pack of condoms in one of the drawers. He threw the condoms at Echelberry who was holding their one and a half year-old son, Hunter. The condoms hit Hunter in the face, leaving a welt and a scratch. When Echelberry told Pickens that he hit his son in the face, Pickens responded "That's what your son gets for having a dirty slut for a mom." (Tr.p. 78).
 {¶ 15} Pickens then walked out of the room with the cordless phone. He gave it to Hughes, who was still on the couch, and instructed her to call some of his friends. Pickens returned to the bedroom and began grabbing at Echelberry's face and pulling her hair again, putting his fingers in her eyes. During this time, Pickens also threw Echelberry's belongings around, breaking some of her possessions.
 {¶ 16} Eventually, Pickens again calmed down and told Echelberry to pack her things and be at his house in a half an hour to move in with him. Pickens then threatened to kill her in front of her children if she was not there. Pickens kissed Echelberry and left.
 {¶ 17} Pickens argues, in his brief, that the State failed to prove the elements of the crime of Burglary. First, he argues that the State did not show that he entered the apartment with the "purpose to commit a crime." The Ohio *Page 7 
Supreme Court has specifically addressed the requirement that a person trespass with the purpose to commit a crime. The court held that the element of purpose to commit a crime can be satisfied when intent is formed at any point during the trespass and need not be formed prior to entering the occupied structure. State v. Fontes, 87 Ohio St.3d 527,721 N.E.2d 1037, 2000-Ohio-472; State v. Jones, 3rd Dist. No. 1-04-53,2005-Ohio-6859. In the present case, although Pickens may not have intended to commit a crime when he entered the house, he began assaulting Echelberry, committing the offense of domestic violence. Thus, the element that Pickens' had a "purpose to commit a crime" is satisfied.
 {¶ 18} Pickens also contends that he did not trespass when he entered Echelberry's apartment. At trial, Echelberry testified that she did not remember locking the front door when she came home early the morning of January 20, 2007. Because the door was unlocked, Pickens was able to come right into the apartment. However, the fact that the door was unlocked, or that Pickens had previously resided in the apartment does not negate the element of trespass. Even between spouses, where one spouse exercises custody or control of a dwelling, the other spouse may be criminally liable for trespass. State v. Lilly, 87 Ohio St.3d 97,717 N.E.2d 322, 1999-Ohio-251.
 {¶ 19} Moreover, Pickens argues that it was not proven that he entered with "force, stealth or deception." However, Pickens entered through an unlocked door *Page 8 
during the morning hours of January 20, 2007. He did not knock before entering, nor did he wake Hughes, who was sleeping on the couch, to alert her to his presence in the home. We find that this is sufficient to meet the definition of "force, stealth or deception." See State v.Ward (1993), 85 Ohio App.3d 537, 620 N.E.2d 168.
 {¶ 20} Based on the foregoing, we find that the testimony presented during trial, coupled with the fact that no contradictory testimony was presented, make it highly probable that the jury carefully assessed the credibility of each witness and properly weighed and considered all of the testimony and evidence presented before rendering their verdict. Therefore, we cannot find that the jury's verdict was against the manifest weight of the evidence. Accordingly, Pickens' first assignment of error is overruled.
 {¶ 21} In his second assignment of error Pickens argues that his trial counsel was ineffective. Specifically, he argues that trial counsel failed to deliver an effective opening statement and that trial counsel was ineffective for failing to present evidence contradicting the element of "purpose to commit a crime."
 {¶ 22} To demonstrate ineffective assistance of counsel, the burden is on the criminal defendant to "show that counsel's performance was deficient." Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed. 674. The Ohio Supreme Court has adopted the two part test articulated in *Page 9 Strickland for demonstrating ineffective assistance of counsel.State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.
 {¶ 23} In order to prevail on a claim of ineffective assistance of counsel, an appellant must first show "that counsel's representation fell below an objective standard of reasonableness." State v.Bradley (1989), 42 Ohio St.3d at 142, citing Strickland,466 U.S. at 687-688. In Strickland, the Court noted that scrutiny of counsel's performance is to be "highly deferential." Strickland, 466 U.S. at 689.
 A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation. . .
State v. Bradley (1989), 42 Ohio St.3d at 142. "Ohio licensed attorneys are presumed competent in their representation of a defendant's interests." State v. Richardson, 3rd Dist. No. 13-06-21,2007-Ohio-115, citing State v. Hoffman (1988), 129 Ohio App.3d 403, 407,717 N.E.2d 1149. It is important to note that "the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance," when determining whether conduct fell below the objective standard of reasonableness. State v. Giesey, 3rd Dist. No. 5-06-31, 2006-Ohio-6851.
 {¶ 24} Moreover, Pickens must overcome a strong presumption that the challenged action constitutes trial strategy. State v. Carter (1995), *Page 10 
72 Ohio St.3d 545, 558, 651 N.E.2d 905. Therefore, in reviewing Pickens' counsel's performance, we must accord deference to counsel's trial tactics and cannot examine counsel's choices through hindsight. SeeStrickland, 466 U.S. at 689.
 {¶ 25} Turning first to trial counsel's opening statement, we find that any difference of opinion with what should have been stated in opening statement amounts to hindsight. At the time of opening, we cannot say if counsel intended to present testimony in Pickens' defense or what he expected to get witnesses to say on cross examination. The fact that trial counsel declined to give an opening statement which discussed the facts is a purely strategic decision. Instead, trial counsel stated:
 I'm not going to get into all the evidence right now. It's going to come from the witness stand, and you'll have an opportunity to hear the witnesses.
 And obviously, there's a difference of opinion as to what happened there that evening; and that's why we're here. That's why we're going to let you make the decision as to what really happened.
 We can tell you this: We've entered not guilty to this charge; and we want you to remember that as he sits here, that he's presumed innocent. You don't have to make a decision to all the evidence. There's ups and downs in any trial. I'll have an opportunity to talk to you when this is all over, and I'll point out more of the reasons why I think the State's case has failed. The Court has told you, and I'm telling you now, there's different elements to this particular crime of burglary; and we'll point out to you in closing as we go through this trial and the evidence is adduced, the different parts of this particular crime, that they have different elements that they failed to prove beyond all reasonable doubt. *Page 11 
(Tr.p. 68-69).
 {¶ 26} In closing argument, trial counsel specifically addressed the elements of the crime of burglary and explained how the State failed to prove each of these elements beyond a reasonable doubt. Trial counsel's choice of opening statement appeared to be part of an overall trial strategy. We cannot find that this strategic decision falls below an objective standard of reasonableness to constitute ineffective assistance of counsel.
 {¶ 27} Pickens also argues that trial counsel should have put on testimony to show that Pickens did not enter Echelberry's apartment with the purpose to commit a crime. We substantially addressed this element of burglary in Pickens' prior assignment of error. As stated earlier, the intent to commit a crime can be formed at any point during the trespass and need not be formed prior to entering the occupied structure to constitute the offense of burglary. Fontes, supra. Therefore, we find that the element of intent is satisfied. Even if Pickens entered Echelberry's apartment intending solely to talk, at some point he formed criminal intent and began pulling her hair, grabbing at her face, and throwing objects at her and her son. Based on the foregoing, Pickens' second assignment of error is overruled. *Page 12 
 {¶ 28} Accordingly, the October 4, 2007 Judgment Entry of the Court of Common Pleas, Crawford County, Ohio is affirmed.
Judgment affirmed.
 PRESTON and ROGERS, JJ., concur. *Page 1