[Cite as *State v. Casey*, 2014-Ohio-1229.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99742**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RUDY A. CASEY

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-568230-A

**BEFORE:** E.T. Gallagher, J., S. Gallagher, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** March 27, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY:    Jeffrey Gamso
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Joseph J. Ricotta
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Rudy Casey ("Casey"), appeals his aggravated burglary conviction.   We find no merit to the appeal and affirm.

{¶2} Casey was charged with one count of aggravated burglary, one count of kidnapping, one count of domestic violence, three counts of child endangering, one count of assault, and one count of aggravated menacing.   The victim, Laura Caraballo ("Caraballo") testified at a bench trial that Casey was her ex-boyfriend and that they had three children together.   They lived together from the beginning of December 2010 through the end of October 2011 and "on and off" for a period of time after that.   (Tr. 63.)   According to Caraballo, Casey had been living with a new girlfriend, Callie Kho ("Kho"), at a separate residence since March 2012.

{¶3} Caraballo testified that on October 20, 2012, at approximately 8:20 p.m., Casey pounded on her front door, and she refused let him in.   Casey broke through the door and entered the house where Caraballo was present with her three children and her friend Carlie Deal ("Deal").   Casey was angry because Caraballo had not been returning his phone calls.   He was also angry that Deal was present in the home because he disliked her boyfriend, Mark Valentino.   According to Caraballo, as Casey was yelling and screaming at Deal on the front porch, he grabbed Deal by the neck and pushed her until her back arched over the railing.   He then shoved Caraballo onto the couch and demanded that she call Valentino.   Caraballo called 911 instead.

{¶4} On the 911 recording, which was played at trial, Caraballo is heard ordering Casey to leave the house. Casey seized Caraballo's cell phone and stepped outside the house where he instructed Kho, who was sitting in a vehicle next to the house, to pick up a friend and return with a gun. As Kho was driving away, Casey grabbed Caraballo and threw her on the ground. Police arrived shortly thereafter and arrested Casey.

{¶5} Caraballo testified that she and her three children were the only tenants of the house located at 4103 Spokane Avenue in Cleveland, Ohio. According to Caraballo, Casey never lived at the house but stored his deceased father's belongings in the basement. Casey did not pay any rent for the house, nor did he receive any mail at the address. Although Casey and Kho helped her move into the house in August 2012, Casey did not have permission to enter her house on October 20, 2012. Caraballo explained that she had taken back a set of keys she had previously given to Casey for emergencies.

{¶6} Caraballo further testified that she did not want Casey around the children. He did not support her having a third child even though he was the father. When he came to the house on October 20, 2012, Caraballo hid the children in a back room for protection.

{¶7} Three witnesses testified for the defense. Julie Yost ("Yost"), Caraballo's neighbor, testified that she had observed Casey moving property into Caraballo's house and assumed it belonged to him. She also stated that she had seen Casey knocking on Caraballo's door in mid-October and that he did not break through the front the door.

However, Yost admitted she did not know if Casey slept in Caraballo's house and did not know if he actually lived there. She also admitted that she had never seen Caraballo and Casey do "relationship things together." Moreover, Yost admitted she did not know if she observed Casey knocking on Caraballo's door on October 10th or October 20, 2012.

{¶8} Kho testified that Casey lived in Caraballo's house, even though she had been in a relationship with Casey since April 2012. However, Kho admitted that Casey needed permission to enter Caraballo's house since at least October 10, 2012, and that Caraballo did not want Casey in the house. On cross-examination, the state played recordings of jail phone conversations where Casey is heard coaching Kho on what to say at trial. In the recordings, Casey instructs Kho to testify that Caraballo sustained her injuries when she slipped and fell on the night of the incident. Kho also admitted that she heard Casey forcibly enter Caraballo's house.

{¶9} Casey, who testified in his own defense, stated that he lived with Caraballo and that he did not need permission to enter the house. He nevertheless admitted that he broke in through the front door because he saw Deal in the house and was concerned for the children's safety. He asserted that he never touched Deal and that Caraballo attacked him. He also stated that Caraballo slipped and fell outside the house. Although Casey claimed that Caraballo returned his set of house keys on October 15, 2012, when confronted with a jail phone recording on cross-examination, he admitted that she took his set of keys away on October 8, 2012. Finally, Casey admitted that Caraballo is the

sole tenant of the house, that she did not want him in the house on October 20, 2012, and that he was not permitted in the house without her permission.

**{¶10}** At the conclusion of the trial, the court found Casey guilty of aggravated burglary, domestic violence, assault, aggravated menacing, and a single count of child endangering. The court sentenced Casey to three years in prison for aggravated burglary to be served concurrently with his six-month terms for the other offenses. This appeal followed.

**{¶11}** Casey's sole assignment of error states:

Appellant Casey's right to be found guilty only on proof beyond a reasonable doubt of every element of the offense[1] was violated when the court found him guilty without making the necessary findings which, in any event, would not have been supported by the record.

**{¶12}** Determining whether the state proved every element of an offense beyond a reasonable doubt involves both a sufficiency and manifest weight analysis of the evidence. In a sufficiency analysis, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶13}** In contrast to sufficiency, weight of the evidence concerns the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d

---

[1] Casey does not specify the offense challenged in the assigned error. However, he only discusses aggravated robbery in his brief and does not challenge his other convictions. Pursuant to App.R. 16(A)(7), we will not apply the assigned error to the other convictions, which Casey chose not to argue in his brief.

541(1997), *superseded by constitutional amendment on other grounds, State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997).   In analyzing the manifest weight of the evidence, we review the entire record, weigh both the evidence and all the reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.   *Id.* at 387.   We will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt.   *State v. Getsy*, 84 Ohio St.3d 180, 193-194, 702 N.E.2d 866 (1998).

{¶14} The court found Casey guilty of aggravated burglary, in violation of R.C. 2911.11(A)(1), which states, in relevant part:

> No person, by force * * * shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another.

Per R.C. 2911.10, the element of "trespass" refers to a violation of R.C. 2911.21 of the Revised Code.   R.C. 2911.21, which governs criminal trespass, states, in relevant part, that "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another."

{¶15} Thus, the mens rea element of aggravated burglary, is included in the trespass element and requires the state to prove, beyond a reasonable doubt, that the

defendant "knowingly" enter or remain on the land or premises of another. R.C. 2901.22(B) defines "knowingly," as follows:

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶16} Privilege is the distinguishing characteristic between unlawful trespass and lawful presence on the land or premises of another. R.C. 2901.01(A)(12) defines "privilege" as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." "Where no privilege exists, entry constitutes trespass." *State v. Lyons*, 18 Ohio St.3d 204, 206, 480 N.E.2d 767 (1985). The state bears the burden of proving the lack of privilege. *State v. Newell*, 93 Ohio App.3d 609, 611, 639 N.E.2d 513 (1st Dist.1994).

{¶17} In finding Casey guilty of aggravated burglary, the court acknowledged that privilege was a pivotal issue, noting that Casey had previously possessed a key to the premises and that he stored belongings on the premises. In *State v. Lilly*, 87 Ohio St.3d 97, 717 N.E.2d 322 (1999), on which the trial court relied, the Ohio Supreme Court held that marriage is not a license to enter a spouse's residence. In *Lilly*, the defendant was convicted of aggravated burglary after breaking into his estranged wife's apartment. The court of appeals concluded that in the absence of a court order, R.C. 3103.04 prevented the wife from excluding the defendant from her apartment, and therefore the element of trespass could not be proven. *Id*. at 97.

**{¶18}** R.C. 3103.04, which governs one's interest in a spouse's property, states that a spouse cannot "be excluded from the other's dwelling, except upon a decree or order of injunction made by a court of competent jurisdiction." The Ohio Supreme Court, however, determined that "R.C. 3103.04 was intended to address property ownership rights of married persons, matters of a civil nature" and that "[p]rivileges of a husband and wife with respect to the property of the other were not meant to be enforced criminally and do not affect criminal liabilities." *Id.* at 102. Accordingly, the Supreme Court held that "[a] spouse may be criminally liable for trespass and/or burglary in the dwelling of the other spouse who is exercising custody or control over that dwelling." *Id.* at paragraph one of the syllabus.

**{¶19}** In *State v. Fields*, 8th Dist. Cuyahoga No. 90154, 2008-Ohio-5867, we affirmed an aggravated burglary conviction where the victim's husband broke into the marital home after they had been separated for six months. Despite the fact that the husband jointly owned the house, had previously lived at the house, and possessed a set of keys to the house, the jury found him guilty of aggravated burglary because his estranged wife "exercised exclusive custody and control of the property after the couple separated." *Id.* at ¶ 27.

**{¶20}** Despite Casey's statements to the contrary, the trial court found that Caraballo had sole custody and control of the apartment because her name was on the lease, she alone paid the rent, and she revoked any privilege Casey may have had when

she demanded the return of the keys two weeks before the incident occurred. Accordingly, the court found:

> So I find that at the moment when Mr. Casey broke through the front door of the premises that he had no right or privilege to do so, that the custody and control over the premises was with Laura Caraballo, and that a trespass was committed.

{¶21} The court further found that (1) Caraballo was not Casey's accomplice, (2) Casey intended to commit domestic violence in Caraballo's apartment, and (3) Casey threw Caraballo on the couch and thus attempted to inflict physical harm.

{¶22} Although the court did not expressly mention the term "knowingly" in its findings, the court stated that it found a trespass had been committed. As previously explained, the aggravated burglary statute does expressly use the term "knowingly," and includes it within the trespass element as the court did here. Therefore, the court found that Casey knowingly entered Caraballo's house without her permission when it found the trespass element had been satisfied.

{¶23} Furthermore, Casey was not prejudiced by the court's failure to expressly discuss the "knowingly" element of the offense. Not only did Caraballo testify that Casey broke into the house without her permission, but Casey admitted he knew he was not permitted inside her house when he broke in. Casey testified, on cross-examination:

> Q: We agree that Laura didn't give you permission to be inside that house on October 20th, right?
>
> A: Yes.
>
> Q: We agree that the only way you entered Laura's house was by punching in the door, right?

A: Yes.

**{¶24}** Therefore, even if the court failed to make an express finding that Casey "knowingly" entered Caraballo's house without privilege to do so, the weight of the evidence demonstrates that the state proved this element and all the elements of aggravated burglary beyond a reasonable doubt.

**{¶25}** The sole assignment of error is overruled.

**{¶26}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
KENNETH A. ROCCO, J., CONCUR
KEY WORDS:
*#99742- S/O v. Rudy A. Casey*

Domestic violence; child endangering; aggravated burglary; sufficiency; manifest weight of the evidence. Aggravated burglary conviction affirmed. Defendant was not

privileged to enter estranged wife's house without her permission where couple was separated and wife exercised exclusive custody and control of the property.