JOURNAL ENTRY AND OPINION
Defendant-appellant Robert Turner appeals his convictions for one count of aggravated burglary in violation of R.C. 2911.11, and four counts of felonious assault in violation of R.C. 2903.11. The appellant was also convicted of firearm specifications, and the trial court found the appellant guilty of the prior conviction specifications and the repeat violent offender specifications. The appellant was sentenced to a four-year term of incarceration on count one and four years incarceration on each of the four felonious assaults in counts three through six. Count one and count three were ordered to be served consecutively. The court imposed a three-year term of incarceration for the firearm specification to be served prior to and consecutively with the other sentences.
Roscoe Macon owns two houses located at 3222 West 31st Street, Cleveland, Ohio. There is one house in the rear occupied by himself and his fiance, Patricia Felix. The testimony at trial indicates that Ms. Felix has two sons, Rahsaan Felix and Jerome Smith. These two men either lived in the rear house or at the very least, frequently spent the night. The front house was occupied by Mr. Macon's two brothers, Constant Turner aka Larry Turner and by the appellant.
On March 23, 2000, Rahsaan Felix was standing in front of the front house and waiting for his girlfriend to arrive. Appellant, who was wearing latex gloves, approached Rahsaan, pulled out a gun, and demanded that Rahsaan return a watch that had been borrowed. Rahsaan indicated that Larry Turner currently had the watch. Larry, who was inside the front house, overheard this conversation and came outside. Larry indicated to the appellant that he did indeed have possession of the watch and then re-entered the house. The appellant, while still holding the gun, ordered Rahsaan to empty his pockets. Rahsaan began to comply, but changed his mind. Rahsaan took a step back from the appellant, the appellant fired the first shot, and then Rahsaan fled towards the rear house. Rahsaan jumped a fence and fled to the street behind the homes where he flagged down a passing motorist and was taken to a family member's home. The appellant fired three shots in all. Ms. Patricia Felix was in the rear house and called 911 when the shots were fired.
The appellant had been back and forth between the front house and the rear house three times during the evening. Patricia Felix, her two sons Rahsaan Felix and Jerome Smith, and two of her nieces Sharon Foster and Juanita Smith, were upstairs in the rear house. Ms. Felix moved her party from the downstairs to the upstairs in order to avoid the appellant. Although the relationship was over, the appellant had been dating Sharon Foster and there was some concern that he was eavesdropping at the window. After the shots were fired, the appellant forced the door of the rear house open. He entered the house with the gun drawn. The first person he encountered was his brother, Roscoe. After ordering Roscoe to the floor, the appellant proceeded up the stairs.
Sharon Foster and Ms. Felix had entered a closet. Jerome Smith and Juanita Smith remained in the room when the appellant burst into the room and ordered Juanita to the floor. He ordered Jerome to open the closet door. At this point, Ms. Felix released the inside of the closet door and exited the closet. Ms. Foster remained hidden. During this entire time the telephone was off of the receiver and the 911 operator heard the entire conversation The recording of this incident was entered into evidence at trial. The appellant was waiving the gun back and forth and Ms. Felix told the appellant do what you gotta do (T. 103). The appellant then turned and walked down the stairs.
The police arrived at the scene shortly thereafter. The appellant approached them from an empty lot near the house and stated that shots had been fired. The appellant was not wearing gloves and was not carrying a firearm. After securing the inside of the house, the police were given a description of the perpetrator and the appellant was apprehended. The police recovered the gloves worn by the appellant near a fence and recovered the firearm underneath a tarp in a vacant field. Both of the gloves tested positive for gunshot residue as did the sleeve of the appellant's jacket.[1]
The appellant sets forth seven assignments of error.
The first assignment of error:
 THE STATE'S CLOSING ARGUMENT UNFAIRLY COMMENTED UPON MR. TURNER'S CONSTITUTIONAL RIGHTS TO SILENCE AND TO TRIAL.
The appellant asserts that during closing argument the prosecution improperly commented on the fact that he exercised his right to silence and his right to trial. The prosecution noted that appellant made no post-arrest statement to the police and the prosecution also commented that the appellant refused to take responsibility for his actions, thus necessitating a trial.
As the Supreme Court held in State v. Cornwell (1999), 86 Ohio St.3d 560, the test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Smith (1984), 14 Ohio St.3d 13. The Court found the touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982), 455 U.S. 209, 219,102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87. The Supreme Court has also stated that the conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives the defendant of a fair trial. State v. Keenan (1993), 66 Ohio St.3d 402, citing to State v. Apanovitch (1987), 33 Ohio St.3d 19. See also State v. Iacona (2001),93 Ohio St.3d 83. Failure to object to the alleged instances of prosecutorial misconduct waives all but plain error. State v. Bey (1999),85 Ohio St.3d 487.
Recently, in State v. Treesh (2001), 90 Ohio St.3d 460, the court reiterated that the prosecution is entitled to a certain degree of latitude in summation. Treesh, citing to State v. Grant (1993),67 Ohio St.3d 465, 482; State v. Liberatore (1982), 69 Ohio St.2d 583,589. A prosecutor may draw reasonable inferences from the evidence presented at trial, and may comment on those inferences during closing argument. State v. Smith (1997), 80 Ohio St.3d 89. In Treesh, supra, the court stated that the State's closing argument must be viewed in its entirety to determine whether the allegedly improper remarks were prejudicial.
In the case sub judice, even when assuming arguendo that the comments by the prosecutor were beyond the bounds of permissibility, a review of the State's closing argument in its entirety clearly demonstrates that the appellant was not denied a fair trial. There was more than ample testimony from eyewitnesses regarding the appellant's behavior. The limited comments by the prosecutor were not of such magnitude as to deny the appellant due process.
The appellant's first assignment of error is overruled.
The second assignment of error:
 THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON SELF-DEFENSE WITH RESPECT TO COUNT THREE.
The appellant argues that the trial court erred in refusing to instruct the jury on the affirmative defense of self-defense with regard to the charge of felonious assault against Rahsaan Felix.
The affirmative defense of self-defense was discussed by the Supreme Court in State v. Palmer (1997), 80 Ohio St.3d 543. The court held that because self-defense is an affirmative defense, the burden of going forward with the evidence on the issue, and the burden of proof for the affirmative defense, rested entirely upon appellant. See R.C. 2901.05(A). The Palmer court noted that in State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus, it was held that in order to establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger. Robbins, approving and following State v. Melchior (1978), 56 Ohio St.2d 15. See, also, State v. Thomas (1997), 77 Ohio St.3d 323.
The Palmer Court found that the trial court properly refused to instruct the jury on the issue of self-defense. The court cited to Melchior, supra, paragraph one of the syllabus, and stated that the proper standard for determining in a criminal case whether a defendant has successfully raised an affirmative defense under [former] R.C. 2901.05 is to inquire whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue."
In the matter at hand, when the appellant took the stand on his own behalf, he testified that he and Rahsaan Felix had a verbal argument regarding the appellant's treatment of Rahsaan's mother, Patricia Felix. At a certain point, according to the appellant, Rahsaan reached for his gun and a physical altercation ensued. The two struggled for the gun and the appellant prevailed. The appellant testified:
 A. When it comes loose, I've got the gun on him. He immediately throws his hands up and says, hold up, hold up, hold up. I was just playing; I was just playing. He was trying to make me think that he was playing with me with a loaded weapon.
Q. Then what happened?
 A. He threw his hands up and said, hold it, wait a minute, hold up.
 He had, maybe about three or four days prior, we had some words about a watch, you know.
Q. But, did he have your watch?
A. Yes, he did have my watch.
Q. Were you aware whether or not he had your watch?
A. Was I aware of it?
Q. Yes.
 A. I was aware that he had taken one, but I was unaware that he had taken another one, the one that I was concerned about.
 Q. Now Mr. Turner, when he had his hands up, what happened after that point?
 A. He had his hands up like this, raised. And, my brother came to the door, Larry came to the door and the way we was situated on the side of the house, I saw my brother, Larry.
 Rahsaan was talking about, hey, Larry, tell your brother, tell your brother, didn't I give you that watch or something. I mean, we was, we, that discussion was over with, you know.
 My brother looked, he closed the door. And maybe about, it was like maybe five, six seconds, the car that he had came in earlier pulled back up, like I knew they had dropped him off, pulled back up. And, I don't know you've been to the house right there on the street. I turned like, not turned around, but my peripheral vision turned like this. Rahsaan reached, he reached just like this, reached for the gun. His hands were, he's trying to reach like this for the gun. I stepped back and I fired, I fired.
(T. 388-390).
When applying the law to the appellant's own testimony describing the incident, it is clear that the appellant did not have a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force. Rahsaan Felix was disarmed by the appellant and standing before him with his hands in the air. Even though, according to the appellant, Rahsaan reached for the gun, this was not a sufficient basis upon which to base a belief that there was imminent danger of death or great bodily harm. After all, it was the appellant who was still in possession of the gun. Firing the gun was not the only alternative.
Given this factual scenario, as testified to by the appellant, no reasonable jury could possibly believe that appellant used deadly force in good faith to defend himself. Like the court in Palmer, supra, this court finds that the evidence at trial was insufficient to support an instruction on self-defense, and the trial court properly refused to instruct the jury on that issue.
The appellant's second assignment of error is overruled.
The third assignment of error:
 THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT MR. TURNER COULD BE CONVICTED OF FELONIOUS ASSAULT WITHOUT NECESSARILY FINDING BEYOND A REASONABLE DOUBT EACH AND EVERY ELEMENT OF THE OFFENSE.
The appellant asserts that the trial court improperly instructed the jury on the crime of felonious assault. The appellant argues that the court's instruction confused the elements of felonious assault with the concept of sufficiency of the evidence when the court essentially charged the jury that threatening the victim with a firearm, when the appellant has previously discharged the firearm, is sufficient for a conviction.
R.C. 2903.11 sets forth the elements of felonious assault as follows:
 (A) No person shall knowingly do either of the following:
 (1) Cause serious physical harm to another or to another's unborn;
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
The trial court instructed the jury:
 Felonious assault the legislature made this a shorter definition thank goodness. Felonious assault is knowingly causing serious physical harm to another and/or they love and/ors in Columbus. I wonder if they speak with and/ors in Columbus felonious assault is knowingly causing serious physical harm to another and/or causing or attempting to cause physical harm to another by means of a deadly weapon.
 Let me say again. Felonious assault is knowingly causing serious physical harm to another and/or causing or attempting to cause physical harm to another by means of a deadly weapon.
(T. 502)
The court then properly instructed the jury that the State charges that the act of the appellant caused and/or attempted to cause serious physical harm to each of the victims (T. 503-504.) The court also set forth instructions and definitions for the jury as to cause, natural and foreseeable consequences, and serious physical harm (T. 504-505). The court than gave the following instruction:
 The act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such a weapon and knowledge by the victim that the defendant has just fired the weapon, is sufficient evidence to convict a Defendant of the offense of felonious assault.
(T. 505). It is to this specific statement that the appellant objects.
A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. State v. Coley (2001), 93 Ohio St.3d 253 citing to State v. Price (1979),60 Ohio St.2d 136, paragraph four of the syllabus, following Cupp v. Naughten (1973), 414 U.S. 141, 146-147, 94 S.Ct. 396, 400,38 L.Ed.2d 368, 373. In State v. Salim (Aug. 16, 2000, Medina App. No. 2960-M, unreported, the Ninth Appellate district determined that the trial court did not err in answering the jury's question. In Salim, the defendant pointed the gun at the victim and threatened to kill him if he did not leave. The defendant then followed the victim out of his trailer and pointed the gun in the victim's direction. Two shots were fired, one injured the victim. The jury asked the court whether brandishing or displaying a weapon, without firing, constitutes felonious assault. The trial court answered that the jury had to make a finding on the underlying offense prior to considering a firearm specification. The appellate court found this answer to be non-responsive, but found no fault with the trial court's instruction.
The Salim court acknowledged, as do we, that under State v. Clark(June 27, 1991), Cuyahoga App. No. 58270 and State v. Brooks (1989),44 Ohio St.3d 185, that evidence that a defendant simply pointed a firearm at the victim is not sufficient to sustain a conviction for felonious assault. However, pointing a gun at someone together with a verbal threat evidencing the intent to use the weapon is sufficient evidence upon which to convict a defendant of felonious assault. State v. Green (1991), 58 Ohio St.3d 239. In Clark, supra, this court found that felonious assault requires a case by case analysis of the facts concurrent to the pointing of the gun. The court stated that a direct threat is not the only method of communicating intent, rather the standard is whether there is an overt act directed toward an assault. The court in Clark noted that the overt act could be pulling the trigger.
Here, as in Salim, this court finds that the jury instructions, when considered as a whole, provided the jury with all the information necessary for it to weigh the evidence and arrive at its conclusion.
The appellant's third assignment of error is overruled.
The fourth assignment of error:
 THERE WAS INSUFFICIENT EVIDENCE OF THE ESSENTIAL ELEMENT OF TRESPASS TO SUSTAIN A GUILTY VERDICT AS TO COUNT ONE, AGGRAVATED BURGLARY. (SIC)
The appellant argues that there was insufficient evidence that the appellant committed a trespass to sustain his conviction for aggravated burglary.
The elements of aggravated burglary are outlined in R.C. 2911.11(A)(1) and (2). The elements of the offense are satisfied where an offender, by force, trespasses in an occupied structure, with the purpose to commit a felony, inflicts, attempts, or threatens to inflict physical harm on another. The criminal trespass statute is found at R.C. 2911.21 and states that no person, without privilege to do so, shall knowingly enter or remain on the land or premises of another. In State v. Lilly (1999),87 Ohio St.3d 97, the court found that the purpose of burglary evolved out of a desire to protect the habitation. The court specifically found:
 Because the purpose of burglary law is to protect the dweller, we hold that custody and control, rather than legal title, is dispositive. See R.C. 2911.21(E), providing that `land or premises' includes any land, building, structure, or place belonging to, controlled by, or in custody of another, and any separate enclosure or room, or portion thereof. Thus, in Ohio, one can commit a trespass and burglary against property of which one is the legal owner if another has control or custody of that property. (Emphasis deleted.)
The Ohio Supreme Court has found that sufficiency of the evidence is in essence a test of adequacy. State v. Thompkins (1997),78 Ohio St.3d 380. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. at 386. In addition, a conviction based upon legally insufficient evidence is a denial of due process. Thompkins, supra, citing to Tibbs v. Florida(1982), 457 U.S. 31, 45. As Justice Cook succinctly stated in the concurrence of Thompkins, a challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. Courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.
In the matter at hand, there was testimony from Roscoe Macon, the owner of both of the homes, that he told the appellant to move out of the rear house. There was no testimony that the appellant had any property interest in either home and there was no testimony indicating that the appellant had control or custody of the rear house. Pursuant to Lilly, supra, this evidence is sufficient for the trial court to send the issue to the jury and was sufficient for the jury to conclude that the appellant lacked the privilege to enter the Macon home whenever he wished.
The appellant's fourth assignment of error is overruled.
The fifth assignment of error:
 THE GUILTY VERDICT ON COUNT ONE, AGGRAVATED BURGLARY, IS AGAINS (SIC) THE MANIFEST WEIGHT OF THE EVIDENCE.
The appellant posits that the State did not produce evidence upon which a jury could have found, beyond a reasonable doubt, that the appellant forcibly trespassed on the property of his brother.
The Supreme Court in Thompkins, supra, illuminated its test for manifest weight of the evidence by citing to Black's Law Dictionary (6 Ed. 1990) at 1594:
 Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.
Thus, as the concurring opinion noted, when deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the State has appropriately carried its burden of persuasion. The only special deference given in a manifest weight review attaches to the conclusion reached by the trier of fact. Thompkins, (Cook, J., concurring) citing to State v. DeHass (1967),10 Ohio St.2d 230.
In the case now before this court, the jury heard repeated testimony that the appellant forced the door of the rear house open. The jury also heard the testimony of Mr. Macon that he had requested his brother to move to the front house. As stated supra in the fourth assignment of error, this was sufficient evidence for the jury to base its conclusion that the appellant lacked the privilege to enter the Macon home whenever he wished.
The fifth assignment of error is overruled.
The sixth assignment of error:
 MR. TURNER WAS DENIED HIS RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
The appellant asserts that he was rendered ineffective assistance of counsel by counsel's failure to object to the prosecutor's improper statements in closing argument.
In State v. Iacona, supra, the Supreme Court restated the test of a review counsel's performance at trial:
 We explained the test for ineffective assistance of counsel in State v. Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373, 379-380. Referring to the seminal case of Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, we stated:
 The Strickland court set forth the standards to be used in determining whether counsel has been ineffective and whether a criminal defendant has been prejudiced thereby. As for ineffectiveness, `when a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.' Strickland, 466 U.S. at 687-688 [104 S.Ct. at 2064, 80 L.Ed.2d at 693]. The court recognized that there are `* * * countless ways to provide effective assistance in any given case. * * *' Id. at 689 [104 S.Ct. at 2065, 80 L.Ed.2d at 695]. Therefore, the court stated that `judicial scrutiny of counsel's performance must be highly deferential. * * *' Id. [at 688-690, 104 S.Ct. at 2065, 80 L.Ed.2d at 694]. In addition, `because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *.' Id. [at 688-690, 104 S.Ct. at 2065, 80 L.Ed.2d at 694]. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.
This court examined the statements made by the prosecutor in the first assignment of error, supra, and the analysis was based upon an assumption that the State's argument in closing was improper. Even with this standard, a review of the State's closing argument in its entirety clearly demonstrates that the appellant was not denied a fair trial. There was more than ample testimony from eyewitnesses regarding the appellant's behavior. The limited comments by the prosecutor were not of such magnitude as to deny the appellant due process. Thus, any error by trial counsel in failing to object to the State's closing argument did not prejudice the appellant.
The sixth assignment of error is overruled.
The appellant's seventh assignment of error:
 THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES ON COUNTS ONE AND THREE THROUGH SIX.
The appellant argues that the trial court erred in imposing consecutive sentences on the appellant without making the requisite findings on the record. Specifically, the appellant asserts that the trial court erred in failing to make a finding that the consecutive sentences were not disproportionate to the offender's conduct.
The trial court here made very explicit findings on the record. He stated that the public needs a lot of protection from you. (T. 540-541). The court indicated its belief that the appellant's intent was to murder Rahsaan Felix and that it was not going to reward the appellant because he was unsuccessful. The court stated from the evidence here you shot him, then but for his fleet of feet act, he would be dead, too. So you are lucky you are not getting a murder charge here. But for your lack of good shooting and his speed you would be doing murder time. (T. 541).
The court went on to find that incapacitation is the only answer for you, rehabilitation is not a legitimate option. Deterrence doesn't work. You weren't deterred by this long stretch of prison you did in the past. Restitution isn't possible or realistic. (T. 541). The court noted that the appellant's offenses were serious, that he caused serious physical harm, economic harm to the victim he shot. The court also found the appellant's recidivism evaluation to be extremely poor.
The court concluded that it arrived at its sentence for the above reasons, to protect the public, and to give the appellant the punishment he deserved. Included in the given sentence was the order to serve the sentence for count one, aggravated burglary, and count three, the felonious assault on Rahsaan Felix, consecutively.
The legislature set forth the requirements for imposing consecutive sentences in R.C. 2929.14(E)(4) which states as follows:
 (E)(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
In State v. Jones (2001), 93 Ohio St.3d 391, the Supreme Court noted that when imposing concurrent sentences the trial court must comply with R.C. 2929.19(B)(2)(c) and state on the record the reasons for doing so. See also State v. Anderson (September 27, 2001), Cuyahoga App. No. 78887, unreported.
Here, the court specifically stated that the sentence was imposed to protect the public and to give the appellant the punishment he deserved [2]. The court also found that the appellant's incarceration was the only possible appropriate punishment because rehabilitation, deterrence and restitution were not viable options. While the appellant correctly states that the court did not explicitly say the words punishment was not disproportionate to the seriousness of the appellant's conduct, the court did explicitly state that the appellant's offenses were serious, that he caused serious physical and economic harm to Rahsaan Felix, that the appellant was not sincerely remorseful, and that his version of the events was nothing short of ridiculous, and that the appellant's actions on the night of the crimes and afterwards were disgraceful. This court finds that the trial court said enough on the record to demonstrate that consecutive sentences were not disproportionate to the seriousness of the appellant's conduct.
The seventh assignment of error is overruled.
This court notes that the trial court inadvertently substituted the words aggravated robbery, for the correct offense of aggravated burglary, in its final entry. Sua sponte, this court orders that the clerical error in the trial court's sentencing order be corrected to reflect that the appellant was convicted and sentenced for aggravated burglary.
Judgment affirmed as modified.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed as modified, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and JAMES J. SWEENEY, J., CONCUR.
[1] The appellant filed a pro se brief with this court asserting prosecutorial misconduct regarding the prosecutor's rendition of the facts in the appellee's brief. The appellant should rest assured that this court has reviewed the entire record including the transcript.
[2] The appellant argues also that the trial court improperly considered the fact that the appellant was on parole when the crimes were committed. R.C. 2929.14(E)(4)(a). This court need not reach the issue because the trial court's statements were sufficient to find that the appellant's history demonstrated the need for consecutive sentences. R.C.2929.14(E)(4)(c).