[Cite as *State v. Hall*, 2019-Ohio-1848.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-T-0069** |
| HARGUS DENNISON HALL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CR 01024.

Judgment: Affirmed.

*Dennis Watkins,* Trumbull County Prosecutor, and *Ashleigh Musick,* Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Hargus Dennison Hall,* pro se, PID# A693-672, Richland Correctional Institution, 1001 Olivesburg Road, P.O. Box 8107, Mansfield, OH 44905 (Defendant-Appellant).


MATT LYNCH, J.

{¶1} Defendant-appellant, Hargus D. Hall, appeals the denial of his motion for postconviction relief by the Trumbull County Court of Common Pleas. For the following reasons, we affirm the decision of the lower court.

{¶2} On December 19, 2016, Hall was found guilty of Burglary, a felony of the second degree in violation of R.C. 2911.12(A)(2) and (D), and subsequently sentenced to a prison term of eight years. Hall's conviction was upheld by this court in *State v. Hall*, 11th Dist. Trumbull No. 2017-T-0032, 2018-Ohio-1676.

{¶3} On May 14, 2018, Hall filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence, seeking postconviction relief pursuant to R.C. 2953.21 with a request for evidentiary hearing.

{¶4} On July 5, 2018, the State of Ohio responded with a Motion to Dismiss Defendant's Petition to Vacate or Set Aside Judgment.

{¶5} On July 24, 2018, the trial court dismissed the Petition to Vacate or Set Aside Judgment of Conviction or Sentence without a hearing.

{¶6} On August 14, 2018, Hall filed a Notice of Appeal. On appeal, Hall raises the following assignments of error:

{¶7} "[1.] The trial court erred in not giving petitioner an evidentiary hearing due to the violation of his Sixth Amendment right to effective counsel [sic], w[h]ere petitioner['s] counsel was not functioning as counsel guaranteed under the Sixth Amendment on investigating other defenses."

{¶8} "[2.] Trial court violated petitioner['s] Fourteenth Amendment right of due process when a jury member came forward right before deliberating and admitted to being a friend of the homeowner and State['s] witness. That jury member lied about his relationship and how close he is with them."

{¶9} "[3.] Petitioner['s] Fourteenth Amendment right of due process was violated when an officer lied under oath about evidence that was seized from the vehicle."

{¶10} "[4.] The trial court erred in not giving petitioner an evidentiary hearing due to the violation of his Sixth Amendment right to effective counsel [sic], w[h]ere petitioner['s] counsel was not functioning as counsel guaranteed under the Sixth Amendment on investigating other defenses and asking for a hearing on a highly

2

prejudic[ial] news paper article published the night the jury went home because it couldn't reach a verdict."

**{¶11}** "[5.] Petitioner[']s 6th Amendment [right] of effective trial counsel was violated w[h]ere trial counsel failed to investigate a mental health report that was supplied to him by petitioner[']s mental health doctor."

**{¶12}** "[6.] Petitioner[']s Fourth Amendment right to search and seizure was violated when the arresting officer and a detective went back to an apartment complex to search petitioner[']s vehicle without a warrant."

**{¶13}** "[7.] The trial court erred by not conducting a hearing for petitioner[']s post conviction relief where petitioner[']s 5th Amendment [right] of due process was violated when no photo line up was shown."

**{¶14}** "[8.] Did the trial court fail to conduct a hearing when petitioner[']s 5th Amendment right of due process was violated w[h]ere the prosecutor was representing petitioner as a victim in one case and prosecuting petitioner in this case."

**{¶15}** "Any person who has been convicted of a criminal offense * * * who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." R.C. 2953.21(A)(1)(a).

**{¶16}** "Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining

3

to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript."  R.C. 2953.21(D).

{¶17}  "Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending."  R.C. 2953.21(F).

{¶18}  "[A] trial court's decision regarding a postconviction petition filed pursuant to R.C. 2953.21 will be upheld absent an abuse of discretion when the trial court's finding is supported by competent and credible evidence."  *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 60; *State v. Clark*, 11th Dist. Trumbull No. 2017-T-0081, 2018-Ohio-794, ¶ 6 (purely legal issues, however, are reviewed de novo).

{¶19}  "In a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness."  *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus.  Specifically, a petitioner must show "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different."  *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 48.

{¶20}  In his first assignment of error, Hall argues the trial court erred by not granting him a hearing on his petition and/or providing him with an attorney or investigator in light of the following circumstances: "the homeowner was never questioned about the burglary which showed no force and nothing disturbed"; "the homeowner who also owned

4

the four wheeler was never questioned by the police, detective, or prosecutor to confirm that the four wheeler was not for sale" or that "Mr. Hall was not allowed to be there"; and the State "never spoke to the homeowner to corroborate [the] story" of witness, James Hughes, "who showed no proof that he lived [at the residence] and is not on the deed or a lease for occupancy." Appellant's brief at 6-7.

{¶21} In its dismissal of the Petition to Vacate, the trial court applied res judicata to Hall's claims. That res judicata applies in postconviction proceedings is well-established. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph eight of the syllabus ("[t]he Supreme Court of Ohio will apply the doctrine of res judicata in determining whether postconviction relief should be given under Section 2953.21 et seq., Revised Code"). "Where defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for postconviction relief." *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982), syllabus; *Perry* at paragraph nine of the syllabus.

{¶22} During Hall's trial, the principal prosecution witness, Hughes, was expressly referred to as the homeowner by defense counsel and other prosecution witnesses. Notably, neither the prosecutor nor Hughes made this claim. Hughes testified that the Mecca Township address was his "primary residence" and that he had lived there for "a little over a month" prior to the burglary with his girlfriend, Misty Mahan, and their children. Hall presented documentary evidence to the trial court that Hughes' girlfriend, Mahan, is the actual owner of the residence and that Hughes' driver license's provides an address

5

different from the address Hall was convicted of burglarizing.[1]  Mahan did not testify at trial.

{¶23}  Hall's arguments regarding the mistaken references to Hughes as the homeowner and the failure of the actual homeowner to testify do not establish substantive grounds for relief.[2]  In the present case, it was Hughes, not Mahan, who discovered Hall in the residence, contacted the police and reported the missing tablet.  Mahan's testimony could have possibly corroborated or contradicted Hughes' testimony on certain points (she was not present when Hall was discovered), but it was not necessary to sustain Hall's conviction.  *See State v. Lilly*, 87 Ohio St.3d 97, 102, 717 N.E.2d 322 (1999) ("[b]ecause the purpose of burglary law is to protect the dweller, we hold that custody and control, rather than legal title, is dispositive").  For the purposes of postconviction relief, Hall needed to introduce evidence that Mahan would have contradicted Hughes in order to demonstrate the required prejudice resulting from her failure to testify.

{¶24}  With respect to the element of trespass, i.e., whether Hall entered the property of another without privilege, Hughes testified that, upon finding a strange car in the driveway, he contacted Mahan to confirm that she was not "expecting any company."  Thus, he could testify that Hall did not have permission to be on the property.  Unless Mahan would have testified that she was expecting Hall and/or offering a four wheeler for sale, there is simply no prejudice to Hall in not having her testify.

---

1.  As noted by both the trial court and the State, Hall's documentary evidence was not attached to the Petition to Vacate, but, rather, to a contemporaneously filed Motion for Expert Assistance.  The court and State further note that the evidence was neither sworn nor certified, although the court considered it and the State did not move to strike it.

2.  This court reached a similar conclusion with respect to appellate counsel's failure to raise the issue in our October 1, 2018 ruling on Hall's Application for Re-Opening in *State v. Hall*, 11th Dist. Trumbull No. 2017-T-0032.

**{¶25}** In other respects, Hall's trial counsel emphasized to the jury in closing argument the weakness in the State's case by not having Mahan testify:

> This case is not about forced entry. I don't know where the government comes up with this stuff, but if I open that door you're telling me I'm forcing it open? Really? Come on. Come on. Use some common sense. It's not about having a door forced open or a window. And I know Mr. Hughes talked about, well, my girlfriend always locks the door. Well, if it's not forced open then maybe she didn't. And he did finally after I pressed him said, well, I can't be 100 percent certain. You're darn right you can't. You left [the house] after her. * * * It would have been great if we would have heard from the girlfriend to say definitively I locked the door, I closed the door. * * * Now, listen, it's either one way or another. It's either, A, the guy left the door open, or let me say the girlfriend. Probably ran out and didn't remember to close the door. Or, B, there's some force in kicking that open. We know that didn't happen here. There's no force. * * * Why don't we have a more complete investigation? * * * Why wouldn't [the police] go to the home and speak to the girlfriend and say hey, did you leave the door open maybe by accident?

It cannot be claimed that trial counsel was deficient for failing to raise arguments regarding the lack of corroboration of Hughes' testimony by Mahan.

**{¶26}** As to whether Mahan should have testified regarding whether she owned a four wheeler for sale, Hughes testified that there were no four wheelers on the property in December 2015. Unless Mahan was going to impeach Hughes' testimony on this issue, the argument is insufficient to afford Hall relief.

**{¶27}** The first assignment of error is without merit.

**{¶28}** In his second assignment of error, Hall claims he was deprived of a fair trial by the presence of K. Brzyscz on the jury. As previously described by this court:

> During the course of the trial, Juror Brzyscz advised that he knew the owner of the home burglarized by Hall: "Her name is Misty. * * * I don't really know her that well. I know her two younger sisters who are good friends of mine. * * * I might see her once a year at a get-together or something." Brzyscz thought Hughes looked familiar while he was testifying, but did not make the connection to Misty until he named the children. Defense counsel expressed some "concern

* * * that you [Brzyscz] may know the girlfriend of the alleged victim [Hughes] and would you find yourself maybe sympathizing more with the alleged victim and his family and Misty?" Brzyscz assured counsel that he would not be swayed by sympathy for Misty's family and would "take the directions of the judge as far as the law is concerned."[3]

Hall's trial counsel was satisfied that Brzyscz would remain impartial.

{¶29} In his Petition to Vacate, Hall asserts that Brzyscz "lied to the trial court about how close a relationship he had with" Hughes and Mahan; "the homeowner and Mr. Hughes live extremely close to this jury member"; and the prosecutor "did not conduct a proper voir dire and mention the homeowner's name during voir dire." Appellant's brief at 15. In support of his arguments, Hall presented what he claims is "Misty Mahan's face book friends list * * * which shows numerous family members of juror Brzyscz being friends of the homeowner and Mr. Hughes."

{¶30} Hall's arguments and documentary evidence fall far short of demonstrating substantive grounds for relief. At most, the document in question indicates that Mahan shares a "mutual friend" with two persons named Brzyscz, neither of whom are the juror in question. It does not establish a significant relationship with either Hughes or Mahan or otherwise impeach Brzyscz' characterization of his relationship with Mahan.

{¶31} The second assignment of error is without merit.

{¶32} In the third assignment of error, Hall claims he was entitled to a hearing on a Petition to Vacate after presenting evidence that the State's witness, Patrolman Tim Parana, lied during trial. Parana testified at trial that, at about 9:45 p.m. on October 10, 2015, he took Hall into custody after responding to a dispatch "of a male passed out

---

3. October 1, 2018 Judgment Entry, denying Hall's Application for Re-Opening in *State v. Hall*, 11th Dist. Trumbull No. 2017-T-0032.

8

behind the wheel of a white Cadillac." Hall requested that the vehicle not be towed. According to Parana:

> We did a quick inventory. * * * We were concerned with property and where the location was at there's been some break-ins in cars so we wanted to make sure we know what was in that car. * * * We just secured it [the vehicle] at the parking lot and transported Mr. Hall to the county jail. [We] locked it up.

{¶33} Later that evening (sometime after 10:22 p.m.), Detective Jolene Marcello of the Trumbull County Sheriff's Office, accompanied by Patrolman Parana, recovered a maroon hoodie and a gray beanie-style hat from the vehicle. She testified:

> Patrolman Parana unlocked the car. It was secured. He unlocked it and we searched the vehicle. * * * I believe Patrolman Parana found the gray beanie in the back seat of the vehicle and I located the maroon hoodie in the trunk.

{¶34} Hall contends that Patrolman Parana lied about securing the vehicle. In support of this contention, he submitted a dispatch log with the following entries for December 11: at 12:29 a.m. "we arrested GRP2221 [the Cadillac's plate number] earlier he dont how windows r down and has property here" and at 1:01 a.m. "contact jail and let them know someone was trying to break into it." According to Hall, this evidence shows that "Parana was transporting the defendant to the county jail and well [sic] the transfer was being done a police call was made that someone was breaking into a Cadillac (defendant's) in the parking lot of the apt complex." Appellant's brief at 17.

{¶35} Hall further contends that if Patrolman Parana had properly secured his vehicle he could have recovered his cell phone and GPS unit from which data could have been extracted to substantiate his claims that he was on Mahan's property looking for someone who was selling a four wheeler.

9

{¶36} If Hall was advised prior to trial that someone had tried to break into his vehicle and/or that items were taken from the vehicle, the issue is res judicata inasmuch as Hall could have raised the issue at trial. Assuming, arguendo, that Hall only learned that "windows r down" through the dispatch log, there is insufficient evidence to support his claims. Detective Marcello testified that the vehicle was locked when she retrieved the hoodie and beanie-style hat and this occurred prior to the attempted break-in, not while Hall was being transported to the jail. The log is not irreconcilable with Patrolman Parana's testimony. There is no evidence in the log of anything being taken from the vehicle.

{¶37} The third assignment of error is without merit.

{¶38} In the fourth assignment of error, Hall contends trial counsel was constitutionally ineffective for not moving to disqualify two jurors who were found, on the day the verdict was rendered, holding copies of the Tribune Chronicle which contained a "highly prejudic[ial] newspaper article" about Hall having just been released from prison. Hall maintains that "it would be realistically impossible that they did not see this article given it was a quarter page picture of petitioner on the front page and the headline was titled 'jury decides burglary suspect's fate'." Appellant's brief at 20-21.

{¶39} This argument is not based on actual evidence that the two jurors read the article in question, but the assertion that to believe that they did not read it "lack[s] common sense." On the contrary, the law presumes that, "[u]nless an appellant demonstrates otherwise, we should assume that the members of the jury followed their oaths and deliberated only upon the evidence adduced at trial." *State v. Durr*, 58 Ohio St.3d 86, 91, 568 N.E.2d 674 (1991); *State v. Green*, 11th Dist. Ashtabula No. 2003-A-0111, 2005-Ohio-6715, ¶ 47 (a claim of prejudice "predicated solely upon [appellant's]

10

presumption that a juror read the newspaper article" and "ignored the court's instructions to refrain from reading newspaper articles" was insufficient to require a mistrial).

{¶40} The fourth assignment of error is without merit.

{¶41} In the fifth assignment of error, Hall argues that trial counsel was constitutionally ineffective for not investigating a mental health report from the day of the burglary in which he complained to his mental health nurse of "not doing to[o] good" and of sleepwalking. Hall proffers no argument as to how these symptoms might have exonerated him, but merely claims that the failure to investigate further was "hugely ignorant and lacking common sense." Appellant's brief at 22. We note that trial counsel moved the trial court for a psychological examination prior to sentencing and submitted Hall's mental health records to the court as mitigation evidence. Without more, there is nothing to suggest that further investigation would have changed the outcome of Hall's trial.

{¶42} Under this assignment of error, Hall raises two further claims regarding the presence of a judge's wife and three co-workers on the jury. Identical claims were raised before and rejected by this court in Hall's Application for Re-Opening in Appeal No. 2017-T-0032, which disposition applies to the present assignment of error:

> Juror Newell-Horton was the wife of a juvenile magistrate with a criminal docket. Jurors Jones, Pankovich, and George either have worked or currently work for job and family services. Juror Pankovich has been retired for eleven years but Jurors Jones and George work together. None of these facts provide compelling grounds for appeal. *State v. Lundgren*, 73 Ohio St.3d 474, 484, 653 N.E.2d 304 (1995) (no basis for error where jurors belong to the same church and knew each other); *State v. Reynolds*, 3d Dist. Allen No. 1-02-70, 2003-Ohio-2067, ¶ 20-21 (failure to strike jurors who knew each other did not constitute ineffective assistance of counsel).

{¶43} The fifth assignment of error is without merit.

11

{¶44} In the sixth assignment of error, Hall argues that he was entitled to an evidentiary hearing on the grounds that Patrolman Parana and Detective Marcello did not have a search warrant when they returned to his vehicle and recovered the hoodie and beanie-style hat. "To leave the car and then return to the car and search it again for specific items without a warrant is a violation of petitioner's fourth amendment right." Appellant's brief at 25.

{¶45} This claim is not supported by any documentary evidence de hors the record or argument as to why it could not have been raised on direct appeal. Accordingly, res judicata applies to bar its consideration.

{¶46} Assuming, arguendo, that the hoodie and beanie-style hat could have been suppressed as evidence, it would have had no effect on Hall's trial. The only evidentiary value of these items is that they matched the description of Hall's clothing given by Hughes and were recovered from the vehicle Hughes identified as being at his residence. However, Hughes was able to identify Hall by his face (Hughes was "pretty close" and "within a foot" of Hall when they spoke) and the license plate number reported by Hughes belonged to Hall's Cadillac. Also, Hall's defense at trial (as well as in post-trial proceedings) was not based on mistaken identity, but that Hall did not enter the residence with a criminal purpose. The admissibility of the hoodie and beanie-style hat was not material to Hall's conviction.

{¶47} The sixth assignment of error is without merit.

{¶48} In the seventh assignment of error, Hall argues that he was entitled to postconviction relief on the grounds that Hughes identified him from a single photo rather than from a photo line-up: "Although petitioner never argued he was in the house

petitioner was left with no choice to say he was given the fact that Mr. Hughes was [to] testify it was him based on one photo identification line up." Appellant's brief at 26.

{¶49} As with the argument regarding the evidence recovered from his vehicle, Hall's claim that Hughes' identification of Hall should have been suppressed is barred by res judicata. Hall provides no reason why it could not have been raised on direct appeal.

{¶50} Additionally, Hall provides no argument in favor of suppression. This court has held that "there is no general requirement that the defendant must be identified in photograph lineups." *State v. Miller*, 11th Dist. Lake No. 2011-L-111, 2012-Ohio-3515, ¶ 53. In the present case, Sergeant Harold Wix testified that he had been able to pull up a photograph of Hall on the laptop in his police cruiser based on the license plate number Hughes provided to dispatch. Hughes was standing next to Wix' cruiser while Wix finished obtaining information from Hughes for his report. Hughes noticed the image on the laptop screen and voluntarily identified Hall as the man who was in the house. In the absence of some indication that Hughes' pretrial identification of Hall was impermissibly suggestive and/or gave rise to irreparable misidentification, there are no grounds to grant Hall relief. *State v. Barker*, 53 Ohio St.2d 135, 142, 372 N.E.2d 1324 (1978).

{¶51} The seventh assignment of error is without merit.

{¶52} In his eighth and final assignment of error, Hall asserts that Prosecutor Diane Barber was under a conflict of interest in that, while she was prosecuting Hall for burglary, she was "representing him as a victim" in a case against his father, Donald Hall, in Trumbull County C.P. No. 92 CR 00142. In the case against Donald Hall, who was convicted of Rape in 1992, proceedings for a sexual predator determination were initiated in January 2017, about one month after Hall's trial in December 2016. This final argument fails for several reasons.

{¶53} Inasmuch as the sexual predator proceedings were not initiated until after Hall's trial concluded, there was no conflict. Alternatively, if the proceedings were contemporaneous, the alleged conflict should have been raised before the trial court or on direct appeal, thus rendering the matter res judicata.

{¶54} Moreover, as noted by the court below, "[t]he prosecutor represents only the interest of the State * * * not the interests of the complaining witness." *State v. Johnson*, 2d Dist. Greene No. 88-CA-83, 1989 WL 43040, *5. Although Hall claims to have written Prosecutor Barber letters regarding Donald Hall's case, there is no indication that these letters contained any information relevant to his case. And, even if they did, it was Hall who provided the information to Barber.

{¶55} The eighth assignment of error is without merit.

{¶56} For the foregoing reasons, the Trumbull County Court of Common Pleas' denial of Hall's motion for postconviction relief is affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, J.,

MARY JANE TRAPP, J.,

concur.